**Bill HOUSEHOLDER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 14760.

Missouri Court of Appeals,
Southern District,
Division Two.

March 6, 1987.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Movant Bill Householder appeals from a denial, after evidentiary hearing, of his Rule 27.26 [1] motion to set aside a judgment upon a jury verdict finding him guilty of three charges of first degree assault. This court affirmed the conviction in *State v. Householder*, 637 S.W.2d 324 (Mo.App. 1982).

Movant's sole point is that the trial court erred in denying the motion because movant was denied his constitutional right to a fair trial "by being handcuffed and waist-chained in court ... in that there is nothing in the record to indicate that movant had made any threats or engaged in any disruptive conduct which would have justified restraining him in court during the morning of his trial and movant's presumption of innocence was thereby weakened."

Rule 27.26(b)(3) reads:

"(3) A proceeding under this Rule ordinarily cannot be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal."

In commenting on Rule 27.26(b)(3), this court has said:

"It is sometimes difficult to distinguish 'mere trial errors' from 'trial errors affecting constitutional rights' as the magnitude of the error may be the factor which controls.... An issue which could have been raised on appeal, even though a constitutional claim, should only be allowed in a post-conviction motion in rare and exceptional circumstances when required by fundamental fairness." (Citing authority.) *Haslip v. State,* 717 S.W.2d 533 (Mo.App.1986)

At the motion hearing movant introduced into evidence the transcript of the jury trial at which movant was represented by attorney Samuel J. Short, Jr. Movant makes no claim that Mr. Short's representation was in any way deficient.

At the jury trial, prior to voir dire examination of the veniremen, the following occurred:

"MR. SHORT: Your Honor, I do not have a written motion on this, I would with regard to the handcuffing of the defendant we would be most happy with anything to facilitate order in this. I would ask that the defendant at recesses or at lunch break or depending on how long this goes later in the evening not be exhibited in the handcuffs or chains in front of the jury. I think this has a very negative effect and as I say we would be more than happy to cooperate in any way following any rules or suggestions made by the Court being remaining seated until such time as this jury was gone or whatever the Court feels necessary with regard to that."

THE COURT: ... "As to any restraints on Bill, it is not my intention and *Sheriff don't exhibit him in any way in front of these jury members in any type of restraints.* Keep him in the back room. Everyone, when the jury comes in and out everyone stay at that counsel table, including the attorneys until the jury is completely out of the room. That way they don't feel something is funny with the attorneys getting up and walking around and the defendant not. *After the jury is out of the room we will*

---

1. All references to rules are to Missouri Rules of   Court, V.A.M.R.

*escort him in a way where he* is *not shown in front of the jury with any type of restraints on him.* Now, Bill, I have just said that but if you are in any way disruptive of this Court or this courtroom I will have you restrained or will take appropriate action at that time. If you don't do that I am going to make sure the jury never sees you in restraints. (Emphasis added.)

THE DEFENDANT: Thank you sir, appreciate it."

The jury trial lasted one day. In the afternoon, after the defense had rested and before the instructions were read to the jury, the following occurred:

"THE COURT: All right. We are still waiting on instructions to be typed. However, at this time I want to make a little record and then put into the record what the Court intends to do. This defendant has a previous conviction of assault with the intent to kill, he also has a previous conviction of armed robbery, isn't that correct?

[PROSECUTING ATTORNEY]: That's correct, Your Honor.

THE COURT: This defendant also has a very explosive temperament and is prone to violence when something upsets him. *During the course of this trial there have been 2 different handmade knives or what's commonly called shivs taken off the defendant. One of them is a spoon handle which has been sharpened to a sharp point and was found on him this morning when we broke for lunch, right after we recessed for lunch. After that was found there was a search conducted of the defendant and the spoon portion of the spoon had also been sharpened to a very sharp point and was found in a cigarette pack. The defendant has made the comment that he is not going back to the penitentiary in that he has been there one time before.* It's the Court's intention and the Court is going to after closing arguments are over and after the jury retires—when they have to deliberate—when we have word that the jury is coming back in the defendant is going to be restrained with a waist chain and handcuffs and the chain through the handcuffs where he cannot get his arms loose and move them freely. The character of this courtroom is such there is one long counsel table, the defendant all day has been seated in the center of the counsel table and it is possible for him to sit in the chair with the waist chain and handcuffs attached to the waist chain with a jacket on that he has been wearing all day where it will not be noticeable to any jury member or to any member of the audience that might be in the courtroom that he is so restrained. The Court is going to take that precaution when the jury is due to come back in here, not going to do it during closing arguments. *We have been very careful throughout the trial, the defendant has not been restrained in front of the jury in any manner. The jury's not even seen him escorted by any of the officers.* Do either of you have anything else you want to put in this record:

[PROSECUTING ATTORNEY]: No, Your Honor.

MR. SHORT: *No, Your Honor."* (Emphasis added.)

Immediately before the jury returned to the courtroom, having reached the verdict, which was guilty on all three counts of assault in the first degree, the following occurred:

"THE COURT: The Court will accept those verdicts Ladies and Gentlemen of the jury. This has been a long day for you and—

THE DEFENDANT: You got your gun ready Frog [Sheriff], you are going to need it, I am not going—

THE COURT: You shut up—

THE DEFENDANT: I'm not going to—

[*REPORTER'S NOTE*]: The defendant stood up over-turning the counsel table and thereafter was subdued by the Sheriff. At this point in the proceedings the court reporter left her machine until order was restored.

(The following proceedings were had with Court, counsel and defendant present and order restored in the courtroom.)

THE COURT: All right—

THE DEFENDANT: Why don't you put some bullets in me and get it over with—that would be much nicer—I would like that better.

THE COURT: You are just getting in deeper—

THE DEFENDANT: I don't care, f--- you.

THE COURT: All right.

THE DEFENDANT: Have them kill me, I don't care—I would rather be killed—I would rather die.

THE COURT: Now, just shut that up—

THE DEFENDANT: I ain't going to shut up—

THE COURT: The court is going to enter an order for presentence investigation for you. I am going to have it returnable as quickly as possible. As soon as it's back I will set your date for sentencing. Now, do you have anything else to say to me?

THE DEFENDANT: No, I want to say I want to be sentenced to death.

THE COURT: All right, take him out."

In its order denying movant's motion, the trial court made the following findings:

"[Movant] was handcuffed and chained during the trial.... All during the trial the sheriff first seated the movant at the counsel table and then waited for both attorneys to be seated before bringing the jury in. At all recesses the sheriff first escorted the jury out. The attorneys and the movant remained seated at the counsel table until such time as the jury was out of the presence of the movant. This was done so there would be no attention brought to the fact that movant was handcuffed and waist chained. There is no evidence to show that the jury ever saw or was aware that the movant was chained during the trial until after such time as they had reached a verdict. Mr. Short testified that on the morning of the trial that it was possible that when the movant was brought down from the jail and brought into the courtroom by the sheriff's department officers, that the prospective jurors who were actually out in the hallway could have seen him handcuffed. The Court will assume for the sake of argument that some of the panel members saw the movant in chains before the trial.... During the noon recess the trial court was informed that there was found on the movant a sharpened spoon or shive. Right after the verdict was read the movant told the sheriff, 'Frog, you had better have your gun loaded. You might need it.' At that time the trial judge told the movant to sit down and shut up, at which time the movant shoved the counsel table back, stood up and had to be forcibly subdued by the sheriff...."

Among its conclusions of law the court stated that movant was not denied a fair trial, as guaranteed by the Sixth and Fourteenth Amendments, by being handcuffed and chained.

In *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983), a direct appeal from a conviction, defendant complained that the trial court erred in requiring him to sit with leg irons attached during the trial. In rejecting the contention, the Supreme Court noted that the defendant had previously been convicted of capital murder and had other capital charges pending against him, that the leg irons were attached without objection, that his legs were under the counsel table concealed from view from the jury, that at no time was defendant moved in the courtroom with restraints, and there was no showing that any juror saw the restraints. The court held, at p. 525, that the trial court "was only exercising proper discretion to maintain courtroom security under the circumstances."

In *State v. Hankins*, 642 S.W.2d 606 (Mo.1982), defendant asserted that the trial court erred on two occasions when it refused to declare a mistrial when defendant

was "viewed by members of the jury in handcuffs and chains." On the first occasion defendant, in handcuffs and with a chain around his waist, was taken up the exterior steps of the courthouse. There was testimony that some veniremen were present. On the second occasion, during a lunch break, defendant, while wearing handcuffs, was taken "on the way to the sheriff's office down to the north entrance of the courthouse where four or five of the jurors were standing."

In upholding the conviction, the Supreme Court pointed out that it is a normal, regular, highly desirable and necessary practice to handcuff prisoners when they are taken from one place to another, and that the jury is aware of this.

In *Bibbs v. State*, 504 S.W.2d 319 (Mo. App.1973), a Rule 27.26 proceeding, the court rejected the movant's contention that he was deprived of his right to a fair trial because he was shackled in the presence of the jury during the first day of the trial. The court said that the trial court is charged with maintaining an orderly procedure in the courtroom, and the judge may properly exercise his discretion in determining the restraints necessary to maintain order. The defendant had been guilty of somewhat disruptive conduct before the restraints were imposed and had refused to come out of his cell. The bailiff was instructed to bring him out forcibly, which he did, and defendant was handcuffed when he was brought to the courtroom. The court of appeals held there was no abuse of the trial court's discretion in ordering the defendant to remain in handcuffs.

Appellate review of the trial court's order is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). Those portions of the jury trial record quoted above show that movant's violent and outrageous conduct demonstrated the justification, indeed necessity, for the restraints. This court holds that the findings, conclusions and judgment of the trial court are not "clearly erroneous"

and indeed are fully supported by the record.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concurs.