**STATE of Missouri, ex rel., Dr. Anton C. ROEDEL, Petitioner,**

v.

**The Honorable M. Zane YATES, Commissioner, St. Louis County Family Court,**

and

**Calzona Hall, Director, St. Louis County Department of Justice Services, Respondents,**

and

**Judith Roedel, Intervenor.**

No. 70605.

Missouri Court of Appeals, Eastern District, Writ Division Two.

July 3, 1996.

Michael R. Young, Clayton, for petitioner.

Eva C. Steinhubl, County Counselor's Office, for respondent Calzona Hall.

Bryon Hettenbach, Maia Brodie, Clayton, for intervenor.

RHODES RUSSELL, Presiding Judge.

Dr. Anton C. Roedel ("Husband") seeks to make absolute a writ of habeas corpus issued by this court. Husband claims the family court commissioner who issued the warrant for Husband's arrest lacked the authority to do so. Husband also argues the warrant is insufficient in that it does not include specific findings that Husband has the ability to pay the court-ordered sums and does not specify what Husband must do in order to secure his release from jail. We hold that the family court commissioner does have authority within the family court's jurisdiction to sign and

execute commitment orders. We direct the commissioner to amend the order of commitment to correct the insufficiency and quash the writ.

The underlying facts of this case are as follows: On July 26, 1990, Husband was divorced from Judith Roedel ("Wife"). Husband failed to pay maintenance and the marital debts as ordered in the decree of dissolution. After Wife brought contempt proceedings, Husband signed a consent judgment and order finding him in contempt, in which he admitted that he had intentionally and willfully failed and refused to pay the maintenance building up an arrearage of $80,687.91.

Husband was found in contempt again by St. Louis County Family Court Commissioner M. Zane Yates ("Respondent") on May 3, 1996. Respondent issued his Judgment and Order of Contempt which stated that Husband would be imprisoned unless he purged himself of contempt by paying $20,625 to Wife and $2,909.44 plus interest to Franklin County Mercantile Bank on or before May 21, 1996. On May 21, Associate Circuit Judge Dennis N. Smith signed the Judgment and Order of May 3rd.

On May 23, Husband had failed to make any of the payments required by the order, and Respondent issued a Warrant and Commitment Order that Husband be imprisoned. The order was executed upon Husband on May 24. The same day Husband filed his petition for writ of habeas corpus, we issued the writ.

■ Husband's petition asserts three grounds for relief. First, Husband contends that Respondent lacks the authority to issue a warrant for Husband's arrest.

Section 476.110 RSMo 1994 provides that "[e]very court of record shall have power to punish" for contempt. As circuit courts, family courts are courts of record. See § 476.010 RSMo 1994. Section 487.020.1 RSMo Supp.1995 allows family court commissioners to hear all family court cases. Section 487.080.1(6) RSMo 1994 includes within the exclusive original jurisdiction of the family court "[a]ctions for determination of support duties and for enforcement of support." The instant case is for enforcement of support, therefore it was assigned to a commissioner for hearing.

Prior to recent amendment, the family court procedural scheme, in § 487.030 RSMo Supp.1995, required commissioners in each case to "transmit to each judge all papers relating to the case, together with his findings and recommendations." Notice of the findings of the commissioner and a statement apprising the parties of the right to file a motion for rehearing would be sent to the parties. *Id.* In cases such as the instant one, the findings and recommendations of the commissioner would become the decree of the court upon denial of the motion, or if no motion was filed, on the day of the last date for filing a motion for a rehearing.

■ As noted recently by the Western District, rehearing before the family court judge is discretionary. *State ex rel. Kramer v. Walker*, 926 S.W.2d 72, 75 (Mo.App.W.D. 1996). The statute provides no automatic right of review. *Id.* In *Kramer*, the court held that Rule 51.05, providing for a change of judge without cause when the motion seeking such change of judge is timely filed, applies to commissioners of the family court as it applies to an associate circuit judge. *Id.* at 76. The court reasoned that the commissioner serves as a judicial officer of a statutory court, exercises judicial discretion, and is a member of the judicial branch of government. *Id.* at 76. Commissioners are obligated to follow established procedural and substantive law, and are required to conduct themselves as judicial officers. *Id.* The court held, therefore, that rule 51.05 applies to commissioners as to associate circuit judges. We agree with the Western District's reasoning. Not only must commissioners act in a manner befitting a member of the bench, as required by § 487.050 RSMo 1994, but § 487.020.2 RSMo Supp.1995 requires that commissioners have the same qualifications as circuit judges. Family court commissioners, therefore, are representatives of a court of record with authority

comparable to that of the judges of the family court.

To clarify the role of family court judges, the General Assembly recently enacted House Bill No. 1619. 1996 Mo.Legis.Serv. 3, (Vernon). House Bill No. 1619 not only added a provision to § 487.030.1 RSMo Supp. 1995 that in cases like the instant one "the findings and recommendations of the commissioner shall become the judgment of the court when entered by the commissioner," but also deleted the requirement that the commissioner transmit all papers relating to the case to the judge. This amendment eliminated the delay under the previous scheme between the findings of the commissioner and their becoming judgment upon denial of rehearing or expiration of the time allowed to file for rehearing.

The Bill also amended sections within Missouri's Adult Abuse and Child Protection statutes.[1] Where such cases used to require action by a "judge," that same action may now be taken by a "court" whose definition includes judges and commissioners. The Bill indicates a legislative intent to consider commissioners on a par with judges within the family court.

Husband maintains that the Warrant and Commitment Order is not a "finding" or "recommendation" of the commissioner, therefore cannot be within Respondent's power to issue. Husband does not argue that Respondent lacked the authority to issue orders such as the original Judgment and Contempt Order that Husband was in contempt and must be incarcerated should he fail to purge himself. Having conceded that power to Respondent, Husband's claim that after validly executing the original contempt order Respondent could not validly execute a warrant and arrest following up on the contempt order is inconsistent. The order stating that Husband is in contempt is clearly a "finding" and within the commissioner's authority. The legislature would not have intended to provide commissioners with the greater power to find contempt and provide for purging requirements, and yet withhold the lesser power of executing a subsequent commitment order. Any question as to the commissioner's authority has been resolved by the changes in the new bill. Pursuant to

revised § 487.030.1, we hold that Respondent had the authority to sign and execute the Warrant and Commitment Order. Point one is denied.

Husband's second point in support of his petition is that the Warrant and Commitment Order was insufficient because it did not include specific findings that Husband had the ability to · pay the court-ordered sums. We find that the Commitment Order included sufficient and specific findings that Husband had the ability to pay. There is no defect. Point two is denied.

 Husband's final point contends that the Commitment Order is insufficient because it does not specify what Husband must do in order to secure his release from jail. The contemnor must have the ability to purge himself to justify imprisonment for civil contempt. *State ex. rel. Barth v. Corrigan*, 870 S.W.2d 458, 459 (Mo.App.1994). Otherwise the coercive purpose for civil contempt is frustrated as the contemnor has no key to the jailhouse door. *Id.* It is clear from the Contempt Order that Respondent intended that in order to purge himself Husband must pay the sums indicated therein. The Warrant and Commitment Order, however, must tell Husband and his jailer what action on his part would constitute purging. We therefore order Respondent to amend the Warrant and Commitment Order by including that Husband will be imprisoned until he shall purge himself of contempt by paying to Wife the sum of $20,625 plus interest, and by paying to Franklin County Mercantile Bank the sum of $2,909.44 plus interest.

The writ of habeas corpus is quashed. The cause is remanded to the Family Court of St. Louis County for amendment and execution of the Warrant and Commitment Order.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.

---

1. §§ 455.010–455.085 and §§ 455.500–455.538   RSMo.