**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Bill HOUSEHOLDER,
Defendant-Appellant.**

**Nos. 12328, 12330 and 12331.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied July 23, 1982.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Joseph B. Phillips, Phillips & Phillips, Stockton, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Bill Householder, was charged in three separate informations with the crime of assault in the first degree. Following a change of venue from Vernon County, Missouri, the cases were consolidated and jury-tried in Cedar County. The jury found Householder guilty on all three charges, and he was thereafter sentenced by the trial court to five years' imprisonment on each charge, with the sentences to run consecutively. This appeal followed.

Evidence introduced at trial, sufficient to uphold the convictions, was as follows. On January 22, 1981, Householder was living with a friend, John Mahana, in a small cabin rented by John near Nevada, Missouri. On that evening, John's two brothers, Mark and Jim Mahana, his sister, Jackie Herbert, and a friend, Marshall Sutcliff, came to the cabin to visit with John and Householder. The group sat around the cabin talking and drinking intoxicating beverages.

An argument between Householder and Sutcliff erupted when Sutcliff accidentally knocked an empty whiskey bottle belonging to Householder off a shelf when he reached for a pack of cigarettes. John Mahana sided with Sutcliff, which angered Householder. Householder picked up a large stick and broke it over John's head. A general melee erupted during which John and Mark were knocked to the floor by Householder. Householder then picked up a loaded .12 gauge shotgun, pointed it at Mark Mahana's head and pulled the trigger. The gun misfired. John Mahana then grabbed the barrel of the shotgun and attempted to pull it away from Householder. During this struggle, while the shotgun was pointed at John's stomach, Householder again pulled the trigger and the gun again misfired. An unexpended shell had jammed in the breech during Householder's efforts to pump a shell into the chamber and fire the gun.

Householder finally succeeded in pulling the shotgun away from John, re-pumped it, pointed it at Jim Mahana, and pulled the trigger. For the third time, the gun did not fire. Householder then ordered the Mahana brothers to sit on the couch, told them he would kill them if they called the police, and left the premises.

■ Defendant's first point relied on is that defendant was never afforded a preliminary hearing on any of the three charges before a "properly qualified associate circuit judge", and that such a hearing is mandated before a felony information can be filed in circuit court. This claim is based on the fact that the associate circuit judge, William C. Sterett, who conducted the preliminary hearings and bound Householder over for trial, had become 70 years of age prior to the time the preliminary hearings were held, and had not been authorized to continue to serve in that position past the age of 70, pursuant to Article 5, Section 27, Subsection 24, of the Missouri Constitution.

There is nothing in the record to indicate that Householder raised this issue at the associate or circuit court level. He did not raise it at his trial, or in his motion for new trial. When an accused proceeds to trial in a criminal case upon a plea of not guilty without having made an objection that he had no preliminary hearing, or a defective one, he waives his right to object, after conviction, that such was the case. Householder's failure to timely raise this issue in the trial court amounted to a waiver of his right to object here. *State v. Wood*, 596 S.W.2d 394, 400 (Mo. banc 1980), cert. denied, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). The point is denied.

Defendant's second point is that the circuit judge, L. Thomas Elliston, who presided over the trial in the circuit court, had no jurisdiction to conduct the trial because Judge Elliston was improperly assigned by the supreme court to hear the cases. The legal history of this matter shows that on March 18, 1981, when the three felony informations were filed in Cedar County on change of venue, the duly elected and qualified judge for the circuit that included Vernon County, C. David Darnold, disqualified himself in all three cases. On March 26, 1981, the Missouri Supreme Court appointed Clinton K. Higgins, Jr., associate circuit judge, as special judge to hear the cases. Two weeks later, the supreme court appointed Judge L. Thomas Elliston as special judge in the three cases in question.

There is nothing in the record to indicate that Judge Higgins had been relieved of his appointment by the supreme court or, if so, why. Judge Elliston consolidated the three cases for trial, and proceeded to try the cases in question without any objection from defendant on the grounds that Elliston had no jurisdiction to preside. The

first attack on Elliston's designation as trial judge came in the motion for new trial.

■ Defendant's theory seems to be that the supreme court did not have the authority to appoint Judge Elliston as special judge since Judge Higgins had been previously designated special judge in the case and had not been disqualified by one of the parties or on his own motion. Householder concedes that the supreme court may make temporary transfers of judicial personnel from one court or district to another as the administration of justice requires, and that any judge shall be eligible to sit temporarily on any circuit court upon assignment by the supreme court or pursuant to supreme court rule. Article V, Section 6, Missouri Constitution. He argues, however, that nothing on the record indicates that the administration of justice required the temporary transfer of Judge Elliston from the 29th Judicial Circuit to hear the cases in question, insomuch as Judge Higgins, an associate circuit judge of the 28th Judicial Circuit, had already been assigned to hear the cases.

■ The supreme court's second order transferring Judge Elliston did not specify that Judge Higgins had been disqualified, or was unable to hear the cases for any other reasons, nor do the docket sheets in any of the cases so state. Be that as it may, the supreme court order transferring Judge Elliston to serve as special judge states that it was done under the authority of Article V, Section 6 of the Missouri Constitution, which states that the supreme court "may make temporary transfer of judicial personnel from one court or district to another as the administration of justice requires." This being so, Judge Elliston was at least a de facto judge, since as a special judge of a court of general jurisdiction he purported to act under color of the authority of a supreme court appointment, made of record, and actually exercised the judicial functions he was appointed to assume. The lack of authority of a de facto judge is a matter of error, not jurisdiction, and not being timely objected to, was waived. *Brinkerhoff-Faris Trust & Savings*

*Co. v. Gaskill,* 356 Mo. 61, 65–66, 201 S.W.2d 274, 276 (1947). See also *State v. Grayston,* 349 Mo. 700, 704–705, 163 S.W.2d 335, 337 (banc 1942) and *Acy v. Inland Security Company,* 287 S.W.2d 347, 350 (Mo.App. 1956). The point is denied.

Defendant's third point is that the trial court abused its discretion in not declaring a mistrial sua sponte during voir dire because of statements concerning the term "reasonable doubt" made by the prosecuting attorney during such examination. The statements in issue are as follows:

"Mr. Swischer: Anybody else? Now, in all criminal cases there is a presumption of innocence which is to shield and protect the innocent rather than something for the guilty to hide behind and we are here today because there are 2 types of pleas—guilty and not guilty and Bill Householder has plead [sic] not guilty. Is there anyone here who for any reason could not give Bill Householder, the defendant, the benefit of the presumption of innocence in this case? I don't see any signs or hands. Now, the State on behalf of the people of the State of Missouri has a burden of proving the case beyond a reasonable doubt. That's to protect the innocent. The judge will define for you the term in the instructions but the State is not required to prove it's [sic] case beyond any doubt whatsoever. Now, is there anyone here who would hold the people of the State of Missouri to a greater burden than a reasonable doubt? Now, in all criminal prosecutions it is required to prove each and every element of the case beyond a reasonable doubt. I expect that is not—the Court will in it's [sic] instructions in greater detail with respect to what reasonable doubt is but nevertheless he is going to give you these instructions and in those instructions if the Court instructs you that proof beyond a reasonable doubt is different than proof beyond any doubt would you [be] able to understand the difference? Do you understand that nothing in life is capable of proof beyond any mathematical certainty? I don't know—

Mr. Short: Your Honor, I am going to object. Mr. Swischer—

Mr. Swischer: Your Honor—

Mr. Short: I would object to that as being improper voir dire question.

The Court: The objection will be sustained. Mr. Swischer, the Court does not define reasonable doubt. I am instructing you not to make any or attempted definitions of that term.

Mr. Swischer: Okay. Is there anyone here who would hold the State to a burden of proof higher than what the Court does instruct? Now, when you go into the jury room those of you who serve on the jury, if you do have a doubt will you ask yourself whether or not your doubt is a reasonable doubt? And if one of your fellow jurors has a doubt will you ask him is your doubt a reasonable doubt?

Mr. Short: Your Honor, if it please the Court, I am going to object to this line of questioning again.

The Court: That objection will be overruled."

■ We doubt that the statements made by the prosecuting attorney constituted definitions of the term "reasonable doubt", see *State v. Ball*, 622 S.W.2d 285, 288 (Mo.App. 1981), but, even if they did, when a defendant, as here, receives all of the relief he asks for in connection with an objection, no error results from the failure of the trial court to grant additional relief. *State v. Wendell*, 542 S.W.2d 339, 342 (Mo.App. 1976). After full consideration of the questions asked here by the prosecuting attorney, we hold that the trial court did not abuse its discretion by its failure to declare a mistrial, sua sponte, because of the statements in question. The point is denied.

Defendant's final point is that the trial court committed reversible error in failing to give an instruction on the lesser included offense of assault in the third degree. The trial court gave instructions on first degree and second degree assault, but did not instruct on third degree assault. The jury found Householder guilty of first degree assault on all three charges.

■ It is unnecessary to discuss the question of whether a third degree assault instruction was supported by the evidence, as the lack of an instruction of such nature, even if error, was harmless. The jury, by finding Householder guilty of first degree assault, did not take the first step in reducing the offense to second degree assault. Under these circumstances, the jury could not have considered a third degree assault instruction, even if it had been given. See *State v. McIlvoy*, 629 S.W.2d 333, 338–339 (Mo. banc 1982); *State v. Smith*, 598 S.W.2d 118, 120–121 (Mo.1980), and *State v. Greenhaw*, 553 S.W.2d 318, 327 (Mo.App.1977). The point is denied.

The judgment is affirmed.

All concur.