963 S.W.2d 374 (1998)
In the Interest of A.H. and M.H.
NEWTON COUNTY JUVENILE OFFICER, Petitioner-Respondent,
v.
E.H., Natural Father-Respondent,
and
S.H., Natural Mother-Appellant.
No. 21997.
Missouri Court of Appeals, Southern District, Division Two.
January 7, 1998.
Motion for Rehearing or Transfer Denied February 3, 1998.
Application for Transfer Denied March 24, 1998.
*377 Laurette Tedders, Canton, MI, for Appellant.
Glenn R. Gulick, Jr., Hershewe & Gulick, Joplin, for Natural Father-Respondent.
John S. Dolence, Joplin, for Newton County Juvenile Officer.
SHRUM, Judge.
This is a case brought under Missouri's juvenile code by the juvenile officer of Newton County, Missouri (Juvenile Officer). It involves two children, A.H. (born December 23, 1987) and M.H. (born September 15, 1990).
The case started February 27, 1995, when the trial court filed an "Order of Protective Custody" based on Juvenile Officer's allegation that the "children are experiencing emotional abuse caused by a continued pattern of the mother [falsely] telling [the children] their father has abused them." During a dispositional hearing that began September 4, 1996, the parties announced a settlement had been reached.
In open court and on the record, a guardian ad litem (G.A.L.) for A.H. and M.H recited the terms of the agreement as he understood them. Juvenile Officer agreed with the G.A.L.'s account of the settlement. Also, E.H. (Father) and S.H. (Mother) testified on the record about the settlement. Thereon, the trial court found "there is emotional abuse by [Mother], and the Court has jurisdiction." Continuing, the trial court stated: "The Court finds that the visits should be as per the stipulation of the parties, and will be fleshed out more fully in an order to be prepared and filed herein." Later, the trial court entered judgment per the "stipulated settlement."
On appeal, Mother charges that "[t]he trial court erred in accepting [the] alleged `stipulation' to enter judgment[,]" assigning various reasons to support this claim of trial court error. We disagree. We find that Mother consented to entry of the judgment from which this appeal is attempted; consequently, she cannot appeal. We affirm.

DISCUSSION AND DECISION
The right to appeal in Missouri is statutory. For most civil actions, § 512.020[1] confers the right to appeal upon "[a]ny party to a suit aggrieved by any judgment of any trial court ...." (emphasis supplied). However, when a judgment is entered pursuant to an agreement of the parties, it cannot be appealed. See Hudson v. Hudson, 865 S.W.2d 405, 408[7] (Mo.App.1993). Parties are estopped or waive their right to appeal under § 512.020 when a judgment is entered at their request. Cook v. Jones, 887 S.W.2d 740, 741[4] (Mo.App.1994); Cheffey v. Cheffey, 821 S.W.2d 124, 125[2] (Mo.App.1991). This follows because a judgment entered pursuant to an agreement of the parties is not a judicial determination of rights. Cook, 887 S.W.2d at 741[3]; Cheffey, 821 S.W.2d at 125[1]. A party simply cannot be aggrieved by a judgment or an order regularly made with his or her express or implied consent; consequently, such a judgment cannot be appealed under § 512.020. See Richard v. Director of Revenue, 869 S.W.2d 913, 914[1] (Mo.App.1994); Foger v. Johnson, 362 S.W.2d 763, 765[2] (Mo.App.1962).
We hasten to note that Mother's right to appeal here is not conferred by § 512.020; rather § 211.261 of the juvenile code is implicated. See J.I.S. v. Waldon, 791 S.W.2d 379 (Mo.banc 1990). The term "aggrieved" as *378 used in § 512.020 is not found in the juvenile code. Instead, § 211.261.1 gives a "parent" the right to appeal from any judgment under the juvenile code "which adversely affects him." See Rule 120.01(b). However, we find the phrase "adversely affected" synonymous with the word "aggrieved." See Estate of Fowler, 860 S.W.2d 380, 382 (Mo.App.1993). See also "aggrieved party," BLACK'S LAW DICTIONARY 65 (6th ed.1990). This is consistent with case law interpreting the word "aggrieved" as used in § 512.020 as meaning "suffering from an infringement or denial of legal rights." Farrell v. DeClue, 382 S.W.2d 462, 466[1] (Mo.App.1964).
Here, the trial court had the opportunity to hear extensive evidence from all parties and decide whether the stipulation was in the best interests of the children. This evidence included the testimony of two experts, Dr. Daniel and Dr. Noble, both of whom concluded that Mother continued to be emotionally abusive to her children. Both recommended that physical custody of the children remain with Father and that any contact with them by Mother be closely supervised. Facing the potential temporary loss of her visitation rights, Mother opted to retain some visitation privileges via a voluntary settlement rather than litigate the issues.
Under the peculiar facts of this case, the rule that disallows an appeal in a civil case when judgment is entered pursuant to an agreement of the parties applies to this appeal under § 211.261.1. This is particularly true because the judgment recites that Mother expressly agreed to "dismiss all pending appeals ... and further ... will not appeal the Judgment and Order entered in this cause." See Curtis v. Board of Police Comm'rs, 841 S.W.2d 259, 263 (Mo.App. 1992).
Mother concedes in her brief what the record clearly shows, namely, that "[t]he proceedings [were] concluded by an alleged stipulation to further reduce Mother's visitation time." We further note that Mother makes no claim that the judgment entered on September 24 was not in conformity with the stipulated settlement. However, Mother's seventeenth point does complain that the trial court erred in accepting the stipulation. Accordingly, we must examine Mother's attempt to preserve a point of error involving the validity of the stipulation.
In this point, Mother first contends that the record reveals that she repeatedly stated she did not agree with nor understand the stipulation. In support of this part of Point XVII, Mother gives certain transcript references to her comments and testimony as the settlement was discussed. Some of Mother's transcript citations are to comments she made before she was placed under oath. Moreover, Mother provides only selective quotes from her sworn testimony. She omits many transcript references that support a different conclusion:
"Q. [by Mother's lawyer] And we've had a discussion with the Juvenile Officer and Guardian Ad Litem concerning a stipulated agreement that we've come to with regard to a modification of the visitation ... concerning your children; correct?
"A. [By Mother] We've come to a
"Q. Yes?
"A. [By Mother] We've come to a[sic] agreement.
"Q. Yes. [S.]
"A. I guess. An understanding or a condition. Accepted condition.
"Q. [S.], yes is good enough.
"A. Okay. Accepted condition. Okay."
Mother was cross-examined extensively by the Juvenile Officer's lawyer about the stipulation. Throughout, Mother argued about the factual basis underlying the agreement. For instance, Mother repeatedly questioned the expert's findings regarding the children, disputed their conclusions that she had abused them emotionally, and contended that the court should not rely on the opinions of experts Daniel and Noble. Yet, Mother also testified that she knew what facts led to the stipulation, understood the agreement, and agreed to honor it:
"MS. TEDDERS [Mother's lawyer] [S.], I think we've concluded our agreement.
. . . .
"MR. PODLESKI [Juvenile Officer's lawyer] Youyou understand that

*379 "A. [by Mother] I understand what I've heard. Okay. AndBut I do not agree
. . . .
"Q.... You agree that you will honor the settlement that I have announced, and that your attorney has talked about today; is that correct?
"A. I agree
"Q. You will honor that.
"A. that I will
"Q. You agree to honor that.
"A. I will honor that, but I do [not] accept it as right."
Mother's repeated protests that she did not accept the stipulation as "right" can reasonably be seen as no more than her disagreement with certain testimony and with critical expert evidence. There is ample evidence in this record to support the trial court's findings that Mother "fully [understood] and comprehend[ed] the terms and conditions of [the] stipulated settlement ... and ... agree[d] to abide by ... said stipulation." We reject Mother's argument to the contrary.
In another prong of Mother's seventeenth point she charges that "[t]he trial court erred in accepting an alleged `stipulation' to enter judgment ... where the guardian ad litem and prosecutor threatened Mother they would terminate her parental rights if she didn't agree to a reduction in visits when Missouri law does not support such a threat...."[2] Mother's argument does not refer to the transcript or other portion of the record on appeal to support this allegation. Our review of the record reveals no threats made by the G.A.L. or by the lawyer for the Juvenile Officer. Mother cannot support this claim; consequently, we reject it outright.
Mother's seventeenth point also maintains that the trial court erred in accepting the stipulation "where the trial court had denied Mother effective assistance of counsel during trial...." Mother presents this part of her point relied on without citation to relevant authority or explanation for its absence. Moreover, she confines her entire argument under Point XVII regarding ineffective assistance of counsel to the following:
"Mother should not be found to have agreed to the findings of emotional abuse... where her attorney had advised the trial court that she could no longer effectively represent Mother for the reasons set forth above.... Further, mother's trial counsel could not effectively represent her during this trial, as previously set forth on the record...."
We note that our supreme court has not promulgated special rules for writing appellate briefs in juvenile cases. However, Rule 110.04 provides that the Rules of Civil Procedure (41-101) apply when no procedure is provided in Rules 110 through 128. Consequently, Mother's brief must comply with Rule 84.04 to preserve anything for our review. The consequences of not complying with Rule 84.04 also attend here. Specifically, "allegations of error ... not properly briefed shall not be considered in any ... appeal...." Rule 84.13(a).
Rule 84.04(d) governing an appellant's point relied on provides, in part:
"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder....
"Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule."
A point of error unsupported by a citation of a relevant authority is deemed abandoned under Rule 84.04(d). In re Marriage of Hershewe, 931 S.W.2d 198, 205[24] (Mo.App.1996). When matters claimed as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned. Glidewell v. S.C. Management, Inc., 923 S.W.2d 940 956[25] (Mo.App.1996). Multiple contentions not related to a single issue may not be grouped together in a single point relied on. DeCota Elec. & Indus. Supply v. Continental *380 Cas. Co., 886 S.W.2d 940, 941 (Mo.App.1994). A point relied on failing to meet the "wherein" or "why" requirements of Rule 84.04(d) preserves nothing for appellate review. Id.
The part of Mother's seventeenth point asserting ineffective assistance of counsel violates every briefing rule recited in the preceding paragraph; consequently, it preserves nothing for appellant review. Yet, in cases involving custody the most important issue is the best interest of the child. Zytniak v. Zytniak, 725 S.W.2d 35, 37 (Mo.App. 1986). Accordingly, we have reviewed ex gratia the entire record of the dispositional hearing held on September 4 and 5, 1996. We determine that Mother's counsel was not ineffective nor was she was rendered ineffective by the juvenile court. Examining the cases In Interest of J.C., Jr., 781 S.W.2d 226 (Mo.App.1989) and In Interest of J.M.B., 939 S.W.2d 53 (Mo.App.1997), we find little was done by counsel in those cases to advocate their client's position; consequently, the respective lawyers were found to be ineffective. Here, the record shows Mother's counsel at the September 1996 dispositional hearing participated vigorously, objecting to evidence, cross-examining opposing witnesses and calling available witnesses.
We need notand we do notdecide whether Mother's earlier counsel was ineffective. This follows because a parent's right to custody of his or her minor child is decided from existing conditions. In Interest of Hill, 937 S.W.2d 384, 388[6] (Mo.App. 1997). Examining the conditions revealed by evidence adduced at the September 1996 hearing, we find no error in the trial court's implicit finding that Mother's lawyer at that hearing rendered effective service. Moreover, the record supports the trial court's finding that the interests of the children were served by accepting the stipulation. We reject Mother's argument to the contrary.
The fourth and final part of Mother's seventeenth point charges that the trial court erred when it accepted the stipulation "where the judgment entered by the court constitutes an impermissible prior restraint and violates the [F]irst [A]mendment of the federal constitution." We conclude that by "accepting" the stipulation, Mother agreed that facts existed to support a finding that she continued to abuse her children emotionally by talking to them about alleged sexual abuse by Father. No authority exists for the proposition that the First Amendment prohibits a court from preventing the emotional abuse of children during supervised visitations. Mother's seventeenth point is without merit.
We affirm.[3]
PARRISH, P.J., and BARNEY, J., concur.

OPINION ON MOTION FOR REHEARING OR TRANSFER
SHRUM, Judge.
Mother's Motion For Rehearing or in the Alternative Application For Transfer to the Missouri Supreme Court makes the following arguments to which this court responds.
Mother contends that this court improperly ignored her thirteenth point and fourteenth point relied on. She says that these points presented issues of jurisdiction, specifically, whether Judge McBeth had authority to enter any orders in this case. Consequently, argues Mother, she was entitled to appellate review of these claims because if Judge McBeth lacked authority to hear the case, then all orders entered by him would be null and void, including the judgment that approved the settlement.
Preliminarily, we note that Mother's motion for rehearing or for transfer mischaracterizes *381 the points in question. They read as follows:
"XIII. JUDGE ANDERTON ERRED IN GRANTING THE GUARDIAN AD LITEM'S UNTIMELY REQUEST FOR CHANGE OF JUDGE WHERE MOTHER WAS NOT GIVEN AN OPPORTUNITY TO CHALLENGE THE CHANGE PRIOR TO RECUSAL AND ESPECIALLY WHERE THE RECORD DEMONSTRATES MOTHER WAS ACTUALLY PREJUDICED BY THE RECUSAL, AND JUDGE ANDERTON ERRED BY FAILING TO RENDER A DECISION ON MOTHER'S REQUEST FOR RECONSIDERATION OF HIS RECUSAL; JUDGE ANDERTON ERRED BY FAILING TO APPLY DUE PROCESS STANDARDS TO MOTHER IN THIS REGARD AND MOTHER'S SUBSTANTIAL RIGHTS WERE ADVERSELY AFFECTED AS A RESULT.
"XIV. ALTERNATIVELY, JUDGE McBETH ERRED IN SUBSEQUENTLY DENYING MOTHER'S TIMELY REQUEST FOR CHANGE OF JUDGE WHERE SAID REQUEST WAS FILED WITHIN FIVE DAYS AFTER NOTICE OF TRIAL WAS FILED AND WHERE THE DENIAL RESULTED IN ACTUAL PREJUDICE TO MOTHER AND WHERE THE ISSUE IS NOT MOOT IN THAT THE JUVENILE COURT HAS CONTINUING JURISDICTION OVER ANY MOTIONS FOR MODIFICATION AND OR TERMINATION THE PARTIES MAY SUBSEQUENTLY FILE IN THIS MATTER, AND ALTERNATIVELY JUDGE McBETH ERRED IN REFUSING TO GRANT MOTHER'S REQUEST FOR CHANGE OF JUDGE FOR CAUSE BASED UPON THE PREDISPOSITION DEMONSTRATION BY JUDGE McBETH AGAINST MOTHER AND HER COUNSEL, AND AS A RESULT OF THE TRIAL COURT'S ERRORS, MOTHER'S SUBSTANTIAL RIGHTS WERE ADVERSELY AFFECTED AND MOTHER DENIED DUE PROCESS."
Contrary to what Mother now argues, Points XIII and XIV as written do not clearly raise issues about Judge McBeth's authority over this case. Even so, when an appellate court has any doubt about a trial court's authority to enter a judgment, the reviewing court is obliged to examine the question. Team, Inc. v. Schlette, 814 S.W.2d 12, 13[2] (Mo.App.1991).
After a previously assigned judge voluntarily recused, the Missouri Supreme Court on December 14, 1995, assigned Judge James P. Anderton of Hickory County to hear the case. On April 18, 1996, while the various lawyers and Mother were appearing before Judge Anderton, he "set the cause for trial at 9 AM on Aug. 7, 8 and 9." The docket sheet entry on that date recites: "All present and notified."
On April 22, 1996, the G.A.L. filed his request "pursuant to ... Rule 126.01" for "a change of judge from the Honorable James P. Anderton." Judge Anderton sustained the G.A.L.'s motion per his written order filed on April 24, 1996. It appears from the record that this order was entered without Mother being given an opportunity to be heard and contest the form, timeliness, and sufficiency of the motion.
Upon learning that the G.A.L.'s motion for change of judge had been sustained, Mother requested a rehearing. She challenged Judge Anderton's ruling on the basis that the G.A.L.'s motion was untimely and that she was not afforded an opportunity to be heard. We find no indication in the record that Mother' motion to reconsider Judge Anderton's order was ever ruled upon.
Mother now argueswithout citation to on-point authoritythat Judge Anderton's allegedly improper sustension of the G.A.L.'s request for change of judge deprived the newly designated judge (Judge McBeth) of any authority to act in the case. We disagree.
The supreme court appointed Judge McBeth pursuant to its constitutional authority to "make temporary transfers of judicial personnel from one court ... to another as the administration of justice requires." Mo. Const., art. V, § 6 (1945). Once Judge McBeth was transferred by supreme court order under Article V, Section 6 of the constitution, he was "clothed with authority *382 to hear the case" and had "full jurisdiction and authority under the transfer order to try the case on the merits...." State ex rel. Ellis v. Creech, 364 Mo. 92, 259 S.W.2d 372, 373-74 (1953). See Lansing v. Lansing, 736 S.W.2d 554, 558 (Mo.App.1987). Even if Judge Anderton erred in sustaining the G.A.L.'s motion to disqualify hima finding we need not and do not makeJudge McBeth "was at least a de facto judge, since as a special judge of a court of general jurisdiction he purported to act under color of the authority of a supreme court appointment, made of record, and actually exercised the judicial functions he was appointed to assume." State v. Householder, 637 S.W.2d 324, 327[3] (Mo.App.1982) (citing Brinkerhoff-Faris Trust & Sav. Co. v. Gaskill, 356 Mo. 61, 201 S.W.2d 274, 276 (1947)). "The lack of authority of a de facto judge is a matter of error, not jurisdiction" and can be waived. Householder, 637 S.W.2d at 327[3]. See Gaskill, 201 S.W.2d at 274.
Here, as in Gaskill and Householder, the question is not one of jurisdiction; it is a question of whether Judge Anderton erred when he sustained the G.A.L.'s motion. Since Mother consented to the entry of judgment in this case, we find she has waived the error, if any, stemming from Judge Anderton's sustension of the G.A.L.'s motion to disqualify. See Cook v. Jones, 887 S.W.2d 740, 741[4] (Mo.App.1994).
Mother's complaint about this court's failure to address Point XIV presents a different issue. It arises from these additional facts.
The August 9-11 trial setting given by Judge Anderton on April 18, 1996, still existed when he sustained the G.A.L.'s motion to disqualify him. The August trial setting remained in place when the supreme court assigned Judge Gerald McBeth of Vernon County to hear this case. The supreme court's order designating Judge McBeth to try the case, dated May 16, 1996, was filed May 20, 1996. A docket entry dated May 20 recites: "Parties Notified [of J. McBeth's assignment]." Sixteen days later, on June 5, Judge McBeth held a "pretrial telephone" conference involving the lawyers for all parties. During this telephone hearing, Judge McBeth ruled on various pending motions, set a pre-trial hearing for June 17, 1996, struck the previous trial setting of August 7-9, and gave the case a new trial setting of September 4-6, 1996. Judge McBeth memorialized his actions and rulings of June 5, 1996, by a "judgment entry" dated June 5 and filed June 14, 1996.
On June 19, 1996, Mother filed an "Application for Change of Judge." She alleged her motion was timely and complied with Rule 126.01. Judge McBeth overruled this motion on June 25, 1996, "as not timely filed."
In her fourteenth point relied on, Mother states in conclusory fashion that her motion to disqualify the judge was timely as it "was filed within five days after notice of trial was filed." With that as her premise, Mother argues that she was entitled to disqualify Judge McBeth as a matter of right and that he had no discretion but to grant the change of judge. Accordingly, she contends Judge McBeth lacked jurisdiction to hear the case and his orders, including the judgment that approved the settlement, were null and void. As authority, she cites State ex rel. Raack v. Kohn, 720 S.W.2d 941 (Mo.banc 1986), Miller v. Mauzey, 917 S.W.2d 633 (Mo.App.1996), Atteberry v. Hannibal Regional Hosp., 875 S.W.2d 171 (Mo.App.1994), and Breazeale v. Kemna, 854 S.W.2d 631 (Mo.App.1993). We agree that Mother has correctly characterized the rules of law announced in these cases. We do not agree that these rules have applicability here.
In pertinent part, Rule 126.01 (promulgated in 1987 effective January 1, 1988) reads:
"a. A change of judge of the juvenile court shall be ordered:
. . . .
"2. Upon application of a party.
"b. The application must be filed within five days after a trial has been set, unless the trial judge has not been designated within that time, in which event the application must be filed within five days after the trial judge has been designated."
Here, the August 5-9 trial date was set by Judge Anderton. Upon his disqualification, the trial was still set for those dates but no trial judge was designated. Once Judge McBeth was assigned or designated to hear the case, Mother had five days within which *383 to file her application. By analogy, we deem what was said in State ex rel. Burns v. Goeke, 884 S.W.2d 60 (Mo.App.1994) to be apropos. Since a trial setting existed but a judge was not assigned, "[i]t is the identification of the judge which commences the time running." Id. at 62. See Anderson v. Anderson, 861 S.W.2d 796 (Mo.App.1993).
Here, Rule 126.01(b) required Mother to assess the acceptability of Judge McBeth within a short time after his identity was determined and move for a change of judge before any proceedings on the record occurred. See Goeke, 884 S.W.2d at 62[3]. "There is no real justification for allowing a party thereafter to move for a change of judge simply because the judge's rulings were contrary to the party's position." Id. Mother's motion to disqualify Judge McBeth was not timely. Mother's arguments to the contrary are denied.
Mother's motion for rehearing or, in the alternative, for transfer to the Supreme Court of Missouri is denied.
PARRISH, P.J., and BARNEY, J., concur.
NOTES
[1] All statutory references are to RSMo 1994 unless otherwise indicated.
[2] We presume that when Mother uses the term "prosecutor" in her point relied on, she is referring to special prosecutor John Dolence, attorney for the Newton County Juvenile Officer.
[3] We have not overlooked Mother's points where she charges that the trial court committed reversible error by (1) entering the Order of Protective Custody on February 27, 1995, (2) ruling on May 5, 1995, the children were in need of juvenile court supervision, and (3) imposing more severe restrictions on Mother's visitations via a judgment entered June 20, 1996. However, we find these claims were rendered moot by Mother's concession on September 5, 1996, that a factual basis existed as of that date for entry of the September 24, 1996, judgment. See Hill, 937 S.W.2d at 388.