**In re the MARRIAGE OF Jana Leigh ECHESSA and Rajab Tongwa Echessa.**

**Jana Leigh Echessa, Respondent,**

**v.**

**Rajab Tongwa Echessa, Appellant.**

No. 24307.

Missouri Court of Appeals,
Southern District,
Division One.

March 12, 2002.

Motion for Rehearing or Transfer Denied
April 3, 2002.

Richard D. Crites, Springfield, for appellant.

Richard D. Bender, Springfield, for respondent.

ROBERT S. BARNEY, Chief Judge.

Rajab Tongwa Echessa ("Appellant") appeals from a ruling of the Circuit Court of Greene County denying his motion for new trial and motion for rehearing, subsequent to a judgment and decree of dissolution of marriage ("judgment") which dissolved his marriage with Jana Leigh Echessa (Buck) ("Respondent"). The judgment incorporated an oral property settlement agreement and an agreement which granted to Respondent the sole legal and physical custody of the parties' minor child. As more fully explained, *infra*, Appellant's two points relied on relate solely to the custody provisions of the judgment.[1]

---

1. In his brief, Appellant does not delineate under what authority he pursued his motion for rehearing. We initially observe that "a pleading is not judged by its title but by its substance and its content." *Farmers State Bank v. Place–Wiederholt Chevrolet–Oldsmobile, Inc.*, 747 S.W.2d 170, 172 (Mo.App. 1988). Here, in the context presented in his brief, we treat Appellant's motion for rehearing as we would treat a motion for new trial as authorized by Rule 78.01, Missouri Court Rules (2000). *See id.* A trial court is afforded broad discretion in awarding a new trial and its ruling will not be disturbed unless that discretion was abused. *Downing v. Howe*, 60 S.W.3d 646, 649 (Mo.App.2001). But, *see also* § 487.030, RSMo 2000 and Rule 129.11, Missouri Court Rules (2000), governing a rehearing before a family court judge. A rehearing before a family court judge is discre-

Because this Court finds that the judgment was entered pursuant to the consent and agreement of both parties, as approved by the trial court as being in the best interest of the minor child, Appellant's appeal is dismissed.

The record shows that one of the primary issues at trial was custody of the parties' minor female child, M.E., born January 11, 1996. At trial, Respondent submitted lay and expert witness testimony showing that M.E. had been sexually abused by Appellant. Although Appellant did not testify, he presented lay and expert witness testimony to the contrary. During the course of trial, and in the words of the trial court, after "negotiations [which] occurred periodically during the process of this case," the parties entered into an oral property settlement agreement and an oral agreement regarding custody of their minor daughter. These agreements were approved by the trial court in open court and were incorporated in the judgment.

In pertinent part, the agreement between the parties as to custody—approved by the trial court as being in the best interest of the child and recommended by the guardian ad litem—provided, *inter alia*, for child support from Appellant to Respondent and provided for a periodic "summary of expenses" which was to be prepared and given to Appellant by Respondent. The agreement further provided that Respondent would have sole legal and physical custody of the child and that

Appellant would have no immediate contact with the child, pursuant to the recommendation made by Respondent's child psychologist/expert witness; and that M.E.'s last name would be changed to that of Respondent's maiden surname. Also, Respondent was accorded the right to relocate herself and M.E. to the State of Kansas—as previously agreed to by Appellant prior to trial.

Appellant raises two points of trial court error. In Point One he contends that the trial court abused its discretion in denying his motion for new trial and motion for rehearing because the settlement of his case was "procured by a fraud committed upon him by his own attorney," which prevented him from making a full presentation of his case on the merits.

In Point Two, Appellant maintains that the trial court abused its discretion and erred in denying his post-trial motions because the judgment was not "supported by substantial evidence." Appellant avers that the trial court based its ruling solely on testimony of Respondent's expert witness, whose testimony regarding Appellant's sexual molestation of his daughter and the concomitant emotional distress suffered by his daughter was not stated "to a reasonable degree of certainty." Hence, Appellant argues the evidence was insufficient to sustain the proposed findings and judgment of the trial court.

■ We need not review Appellant's two points, however. As previously set

---

tionary. *State ex rel. Kramer v. Walker,* 926 S.W.2d 72, 75 (Mo.App.1996); *State ex rel. Roedel v. Yates,* 926 S.W.2d 521, 522 (Mo. App.1996). "The statute provides no automatic right of review." *Kramer,* 926 S.W.2d at 75.

We also observe that a "[d]enial of a motion for new trial is not an appealable order; but appeal must be taken from the judgment to which the motion was directed." *Copeland v. Compton,* 914 S.W.2d 378, 380 (Mo.App.

1996) (quoting *Hitt v. Martin,* 872 S.W.2d 121, 122 (Mo.App.1994)). By extension, the denial of a motion for rehearing before a trial court does not present an issue for review. *See id.* Nevertheless, after having reviewed the argument portion of Appellant's brief, we discern that Appellant merely inartfully worded his two points relied on and is, in fact, appealing from the judgment entered by the circuit court. *See id.*

out, we dismiss Appellant's appeal because the judgment entered by the circuit court was a consent judgment agreed upon by the parties. *Segar v. Segar,* 50 S.W.3d 844, 846–47 (Mo.App.2001); *Cheffey v. Cheffey,* 821 S.W.2d 124, 125 (Mo.App. 1991).

 "The right to appeal in Missouri is statutory. For most civil actions, § 512.020 confers the right to appeal upon 'any party to a suit *aggrieved* by any judgment of any trial court....'" *In Interest of A.H.,* 963 S.W.2d 374, 377 (Mo.App. 1998); *Segar,* 50 S.W.3d at 846–47. "A party is not aggrieved by a judgment entered pursuant to a voluntary settlement agreement." *Segar,* 50 S.W.3d at 847. "Parties are estopped or waive their right to appeal under § 512.020 when a judgment is entered at their request." *A.H.,* 963 S.W.2d at 377. "This follows because a judgment entered pursuant to an agreement of the parties is not a judicial determination of rights." *Id.* Hence, in *Segar,* the Western District of this Court dismissed a father's appeal, holding that since the judgment of the trial court of which he complained was entered on a joint motion and with the consent of both him and his ex-wife, the child born of their marriage was allowed to be relocated with the mother from Columbia to Cape Girardeau. *Id.* at 845–47.

 We observe that this general rule on acquiescence of judgment is not always strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved. *See Hicks v. Hicks,* 859 S.W.2d 842, 845 (Mo. App.1993). In spite of this, our review of the record convinces us that no equitably compelling reason exists which would preclude our application of the general rule.

Initially, we note that Appellant couched both his motion for new trial and his motion for rehearing on the basis that his settlement was "obtained by a fraud and coercion of [Appellant] by his attorney." In both motions he largely argues that the judgment was against the weight of the evidence.

In particular, in his motion for new trial, he complains that "there was evidence which was available to [Appellant's] counsel, which [Appellant's] counsel for some reason unbeknownst to [Appellant] did not explore, develop or produce and have admitted at trial." In his motion for rehearing he calls for a remand of the case for trial "after [Appellant's] current counsel is given sufficient time to explore, develop and obtain the evidence necessary to adequately present to the court evidence which was available to [Appellant's] counsel, ... and which said counsel ... had the ethical duty to [Appellant] to submit." Then in his respective suggestions in support of each such motion, supported by affidavits, Appellant sets out a litany of acts of nonfeasance or negligence by his trial counsel, resulting from his trial counsel's purported ineptness, inattention, and carelessness during the course of litigating Appellant's cause of action.

 We observe that "[f]raud is a malfeasance. That is, 'fraud' is a positive act resulting from a willful intent to deceive." *Harris v. Penninger,* 613 S.W.2d 211, 214 (Mo.App.1981). "On the other hand, 'negligence' is strictly nonfeasance or a wrongful act resulting from inattention or carelessness and not from design." *Id.* "Whatever grade it be, 'negligence' does not include a purpose to do a wrongful act and does not embrace the tort of 'fraud.'" *Id.*

 Generally, "'actions of a party's attorney, including procedural neglect that precludes a client's substantive rights, are imputed to the client.'" *Downing,* 60 S.W.3d at 649 (quoting *Cotleur v. Danzig-*

*er,* 870 S.W.2d 234, 238 (Mo. banc 1994)); *see Estep v. Atkinson,* 886 S.W.2d 668, 675 (Mo.App.1994). Here, the record clearly shows that Appellant's complaints center around the purported negligent acts of his trial counsel and do not constitute acts of fraud. Here, the purported acts of negligence of Appellant's trial counsel are imputed to Appellant.

█ Furthermore, in his suggestions in support of each of his motions, Appellant elaborated that his trial counsel "coerced and forced the settlement agreement upon the [Appellant], and the [Appellant] did not want to agree to the settlement, and only did so because of fear that he would be deported, [and] have criminal charges filed against him." However, in our review we find that the foregoing, purported averments of fraud, even read in conjunction with affidavits attached to the motions, do not set out acts of fraud by Appellant's trial counsel, nor do they state with particularity the circumstances constituting Appellant's trial counsel's purported acts of fraud. *See Tri–Cty. Human Dev. Corp. v. Tri–Cty. Group, XV, Inc.,* 901 S.W.2d 308, 311 (Mo.App.1995). "All averments of fraud are to be stated with particularity, except malice, intent, knowledge

and any other condition of mind which can be averred generally." *Manzer v. Sanchez,* 985 S.W.2d 936, 940 (Mo.App.1999).

We also observe that the record reveals that Appellant had experience in mortgage banking. He showed a history of earnings from his job in 1997 and 1998 in excess of $100,000.00 each year. It can be logically inferred from his job and earnings that Appellant, although a foreigner, was an educated man, who was able to understand legal proceedings. The record also shows that Appellant was given more than ample opportunity at trial to dispute the custody agreement relating to M.E., and bring to the trial court's attention the purported acts of fraud and coercion of his trial counsel.

Lastly, after the parties' attorneys declared to the trial court that the parties had reached an agreement as to property [2] and custody of the child, Commissioner Davis stated:

> I'm going to ask each of the parties— Mr. Echessa, you've not been sworn yet, but I'll do that later ... [a]nd I will ask you whether or not that's your understanding of what the agreement is, and whether or not it's a full and complete agreement as you understand it.

---

2. Although not immediately pertinent to the question of custody as presented in this appeal, we note that at trial, pursuant to the oral property settlement agreement, Appellant paid to Respondent $15,000 in cash and $5,000.00 in a cashier's check in exchange for a quitclaim deed on the parties' home, which was executed by Respondent and deposited with the trial court. Appellant also paid $5,880.00 to Respondent to cover expenses of M.E.'s counseling fees and unpaid birthing expenses. The parties also agreed to divide various marital assets and allocate various debts between themselves.

In entering into the property settlement agreement in open court Appellant's attorney announced:

> Mr. Echessa wanted to make it clear and known to him, as I have done, that regard-

ing these property issues, this is a one-time payment and one-time type scenario. That once these property issues are resolved, that it's truly resolved. That Mr. Echessa cannot come back to court asking the Court to award the proceeds or the property in some different manner, likewise as Jana cannot come back to court and say, "Listen, Judge, I want more money," or "I want the house now," or I want this or that or whatever.

He certainly wanted to just make sure— make sure that that was clarified. Certainly I have [sic] to him directly, and he wanted me to make sure it was known to everybody, that that is the situation that we have in hand as to the property issues.

I'll do likewise with Mrs.-yes, Mrs. Echessa and of the Guardian ad Litem in [M.E.'s] interest.

Also, subsequent to the attorneys setting out the property settlement agreement and setting out the agreement regarding custody of M.E., Commissioner Davis swore in Appellant and remarked:

All right. And let me first—I think it would be appropriate that each counsel confer with your clients before I ask them, under oath, whether or not this is their understanding of the total and complete agreement that the parties reached.

Later, Commissioner Davis observed:

I want both parties to understand that if this is your agreement, when you walk through that door in just a few minutes those issues are gong [sic] to be over if there is an agreement. That's why I'm being very careful to allow you sufficient time to talk to your clients after these announcements.... If you have an agreement, you have an agreement. I don't care if you cross your fingers behind your back, that's not the way the rules are....

After asking Respondent whether or not the agreement announced by the respective trial counsel constituted the total understanding of both parties, Commissioner Davis addressed Appellant and inquired as follows:

All right, Mr. Echessa, same question. Is this your understanding of the agreement? Is it complete? And if it's not, do you have any other additions or comments or questions to the Court?

**3.** Appellant's trial counsel, while acknowledging that Appellant was "from a different country with different cultural issues and so forth" also announced to the court that:

In talking with [Appellant] well before yesterday or today on settling the case ... it's

Appellant responded, "No, your Honor," and "I agree." [3]

Accordingly, there is ample evidence in this record, showing that Appellant fully understood and comprehended the terms and conditions of the stipulated settlement he entered into. We reject his argument to the contrary. Appellant cannot now appeal from a judgment that he previously agreed to. *Segar,* 50 S.W.3d at 847. As such Appellant's appeal is dismissed.

SHRUM, P.J. and MONTGOMERY, J. concur.

my understanding that he does understand what he has agreed to today, to the fullest extent that I can determine at least, and I think that is—that it is a clear issue.