Jennifer Leann MARQUEZ, now
Cookson, Appellant,

v.

W. Omar MARQUEZ, Respondent.

No. 25521.

Missouri Court of Appeals,
Southern District,
Division One.

June 22, 2004.

Jennifer Leann Marquez, pro se.

James R. Sharp, Sharp & Bredesen, Springfield, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Jennifer Leann Marquez, now Cookson, ("Wife") appeals from the Judgment and Decree of Dissolution of Marriage entered March 11, 2003, which dissolved her marriage to Respondent W. Omar Marquez ("Husband"). The judgment incorporated the parties' oral child custody and child support settlement agreement that granted Husband sole legal and physical custody of the parties' minor children, ordered Wife's visitation with the children be supervised, and or-

dered Wife to pay $350.00 per month to Husband as child support.

Husband and Wife were married on December 19, 1997, and separated on March 9, 2000. Two children—Kesley Marquez, born December 27, 1997, and Gabriella Marquez, born January 21, 1999—were born of the marriage. On April 28, 2000, Wife filed a petition for dissolution of marriage in the Circuit Court of Greene County. In her petition, Wife requested joint legal custody of the children with her being designated as the "primary physical custodian." In his answer, Husband requested he be awarded "primary physical custody" of the children.

On April 25, 2002, the family court judge entered an Interlocutory Judgment and Decree of Dissolution of Marriage, which dissolved the marriage of Husband and Wife and divided the marital property and debts between the parties. That day, a temporary parenting plan was entered, which provided that Wife serve as the "residential parent" and granted Husband certain periods of visitation including alternate weekends, alternate holidays, and three two-week periods during the summer. The court also entered a temporary child support order that Husband pay Wife $250.00 per month. The interlocutory judgment specifically recited that the court was retaining jurisdiction to enter further orders concerning child custody, child support, and attorney fees.

On May 1, 2002, the guardian ad litem for the children filed a motion for emergency temporary custody. In the motion, the guardian ad litem stated that he had interviewed the parties and the children; that the children both reported that Wife hurt Kesley's ear when Wife became angered; and that during one interview, Gabriella asked the guardian ad litem, "Why does Mommy call me a fucker?" The guardian ad litem also attached, as support for the motion, several letters from Wife indicating alcohol usage on Wife's part. The guardian ad litem concluded that, "until the source of the children's problems [could] be determined," the children should immediately be placed in the temporary physical custody of Husband, grandparents, or Juvenile Services for foster care placement.

On the same date, a hearing was held before the family court commissioner on the guardian ad litem's motion. The hearing was attended by the guardian ad litem and Husband's counsel, while Wife's counsel appeared later that day and objected to the entry of a temporary order. The family court commissioner entered a temporary order granting Husband temporary physical custody of the children.[1] Wife filed a motion to amend the temporary order of child custody together with an emergency motion for an order to return the children to her home. These motions were denied on November 6, 2002.

A subsequent hearing was held on January 14, 2003. At the hearing, Wife called the children's therapist, Leslie Brown, as a witness. Ms. Brown testified that the children informed her that Wife called them "fucker" and "bitch;" that Wife was going to put Husband in jail; that Wife hurt Kesley because Wife was mad at her; and that they saw a man at Wife's house masturbating. Ms. Brown recommended Wife enter individual therapy and stated that it would be helpful for Wife to receive alcohol and drug treatment. Ms. Brown also testified that the children appeared to be properly cared for while in Husband's care and were very happy to live with Husband. Ms. Brown felt that, at that time, Wife's

---

1. This order was not signed by the family court judge.

visitation with the children should be supervised.

Following a recess taken after Ms. Brown's testimony, the court was informed that the parties had reached a settlement concerning all outstanding issues regarding child support and custody. The guardian ad litem indicated the parties agreed that Husband would have "sole custody" of the children, that Wife would pay Husband $350.00 per month for child support, and that Wife would have one supervised visit with the children per month—one month in Chicago, Illinois, where Husband resides, and the next month in Springfield, Missouri, where Wife resides. According to the record, both parties and their counsel were present when the guardian ad litem explained the agreement, and no one voiced any objections.[2] Wife's attorney agreed to draft the findings and judgment, although he specifically noted that Wife denied all of the allegations made against her. Findings and Recommendations for Judgment from Wife's attorney were tendered on March 5, 2003, and the judgment was entered on March 11, 2003. This appeal follows.

■ Wife appears before this Court pro se and raises eight points on appeal. Husband, in turn, has filed a motion to dismiss for failure to comply with Rule 84.04.[3] We note that Wife "is bound by the same rules of procedure as a party represented by a licensed attorney." *Perkel v. Stringfellow,* 19 S.W.3d 141, 145 (Mo.App.2000). " 'While this court recognizes the problems faced by pro se litigants, we cannot relax our standards for non lawyers.' " *Kline v.*

*Casey's General Stores, Inc.,* 998 S.W.2d 140, 141 (Mo.App.1999) (quoting *Sutton v. Goldenberg,* 862 S.W.2d 515, 517 (Mo.App. 1993)). " 'It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.' " *Id.* (quoting *Sutton,* 862 S.W.2d at 517).

We initially acknowledge that Wife's brief fails to comply with Rule 84.04. Wife's statement of facts is not "a fair and concise statement of the facts relevant to the questions presented for determination" in violation of Rule 84.04(c), as it includes numerous inflammatory, argumentative, and prejudicial statements. Furthermore, the majority of Wife's statement of facts lacks any reference to the legal file or transcript as required by Rule 84.04(i). Wife's Points Relied On also fail to comply with Rule 84.04(d)(1) in that they do not "state concisely the legal reasons for [her] claim of reversible error" or "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(B)-(C). Furthermore, Wife fails to include the applicable standard of review for each claim of error in violation of Rule 84.04(e).

■ Strictly speaking, a failure to comply with the dictates of the rule preserves nothing for appellate review. *Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App.2000). However, we are " 'more tolerant regarding technical requirements [of Rule 84.04] when the questions presented relate to the welfare of children.' " *Capehart v. Cape-*

---

**2.** When the hearing began that day, the court, in calling the case, stated, "Petitioner Jennifer Leann Marquez, who appears with her attorney, Shane Cantin, v. Respondent Omar Marquez, who appears with his attorney, Lynn Johnson. Guardian ad litem, Attorney Kevin Curran also appears on behalf of the best interest of the minor children born of this marriage." After the recess following Ms. Brown's testimony, the court announced, "We are back on the record with the Marquez trial, ... same appearances."

**3.** Rule references are to Missouri Court Rules (2003).

*hart,* 110 S.W.3d 920, 923 (Mo.App.2003) (alteration in original) (quoting *Rinehart v. Rinehart,* 877 S.W.2d 205, 206 (Mo.App. 1994)). Thus, "we will review the issues presented on their merits, provided 'the argument is sufficient in conjunction with the points relied on to ascertain the issues being raised.' " *Stangeland v. Stangeland,* 33 S.W.3d 696, 703 (Mo.App.2000) (quoting *Landry v. Miller,* 998 S.W.2d 837, 841 (Mo.App.1999)). After reviewing Wife's points on appeal and arguments, we determine that we are able to discern her claims of error and will review those claims *ex gratia.*[4] *See Capehart,* 110 S.W.3d at 923.

■■■ "Provisions in a divorce decree will be affirmed unless: 1) there is no substantial evidence to support it; 2) it is against the weight of the evidence; 3) it erroneously declares the law; or, 4) it erroneously applies the law." *Woolridge v. Woolridge,* 915 S.W.2d 372, 375 (Mo. App.1996). "The party challenging a divorce decree bears the burden of demonstrating error." *Id.*

■ For the sake of clarity, we will review Wife's points out of order. Wife argues in Point Four that the court erred in ordering Wife's visitation with children be supervised and in Point Eight that the court erred in allowing Husband to move the children to his home in Chicago, Illinois.

■■ We need not review these points on appeal. In Missouri, the right to appeal is statutory. *Segar v. Segar,* 50 S.W.3d 844, 846 (Mo.App.2001). For most civil actions, the right to appeal to is granted to "[a]ny party to a suit *aggrieved* by any judgment of any trial court . . . ." § 512.020[5] (emphasis added). "A party is not aggrieved by a judgment entered pursuant to a voluntary settlement agreement." *Segar,* 50 S.W.3d at 847. " 'Parties are estopped or waive their right to appeal under section 512.020 when a judgment is entered at their request.' " *In re Marriage of Echessa,* 74 S.W.3d 802, 805 (Mo.App.2002) (quoting *In Interest of A.H.,* 963 S.W.2d 374, 377 (Mo.App.1998)). " 'This follows because a judgment entered pursuant to an agreement of the parties is not a judicial determination of rights.' " *Id.* (quoting *A.H.,* 963 S.W.2d at 377).

In this case, Husband and Wife entered into an agreement after the testimony of Ms. Brown. That agreement included that Wife's visitation with the children be supervised and that Husband could move the children to Chicago, Illinois.

While it would be preferable for the court to place the parties under oath and question them directly about their understanding of and agreement with the stated settlement,[6] such was not necessary given the circumstances of this case. When the guardian ad litem explained the agreement to the court, he also added that "of course, the counsel can correct wherever necessary." According to the record, the parties and their counsel were present, and no one voiced any objections. Indeed, Wife's counsel agreed to draft the proposed Findings and Recommendations for Judgment. In these circumstances, Wife waived any right to appeal the court's judgment because the judgment was entered at her request. *See id.* Points Four and Eight are denied.

■ Wife also alleges that the court erred with respect to the hearing held on May 1, 2002, which resulted in the order of temporary custody entered that day. Wife

---

**4.** Husband's motion to dismiss appeal is denied.

**5.** Statutory references are to RSMo.2000.

**6.** *See, e.g., Echessa,* 74 S.W.3d at 806–07.

argues in Point One that the trial court erred in holding the hearing without her presence; in Point Two that the trial court erred in failing to preserve a record of the hearing; and in Point Five that the trial court erred in permitting inadmissible evidence during the hearing.

We need not address Wife's claims of error as she has failed to show how the trial court's actions prejudiced her in any way. As previously discussed, Wife entered into an agreement with Husband after the testimony of Ms. Brown, and the judgment entered by the court reflected that agreement. We also note that the agreement entered into by the parties is similar to that entered in the order of temporary custody, in that Wife's visitation with the children was ordered to be supervised and Husband was granted sole legal and physical custody of the children. The only noteworthy differences between the order of temporary custody and the final judgment are that, in the final judgment, Husband was allowed to move the children to Chicago, Illinois; Wife was ordered to pay child support to Husband; and the visitation schedule alternated between Chicago, Illinois, and Springfield, Missouri. As Wife agreed to the same provisions in the final judgment that were also included in the order of temporary custody, Wife has waived any right to appeal the court's interlocutory judgment of May 1, 2002, because she was not aggrieved by that judgment. *See Echessa,* 74 S.W.3d at 806–07. Points One, Two, and Five are denied.

■ In Point Six, Wife further claims that she received ineffective assistance of counsel because her attorney "allowed inadmissible evidence into trial, purported [Ms. Brown] to be a witness for [Wife], and concealed evidence from [Wife]."

■ Wife's claim is premised on a belief that she is somehow guaranteed effective assistance of counsel. However, as a general rule, "[t]here is no statutory or constitutional right in civil cases to effective assistance of counsel." *Gilman v. Gilman,* 851 S.W.2d 15, 19 (Mo.App.1993). " '[C]ivil litigants who claim counsel was incompetent or ineffective have no claim of right to a new trial or other relief from the court on that basis and are left to seek redress against such counsel for malpractice.' " *Id.* (quoting *Christiansen v. Missouri State Bd. of Accountancy,* 764 S.W.2d 952, 954 (Mo.App.1988)). "The truth is that almost every lawyer could do a better job the second time around. That does not mean the first trial is unfair. Due process requires only a fair opportunity to each side." *Id.* at 20. In the instant case, each side had a fair opportunity to be heard. Point Six is denied.

■ Wife additionally asserts in Point Three that the court erred by failing to include a finding of domestic abuse in the judgment of dissolution.

Section 452.375.2(6) provides that the trial court shall consider the following factor when determining custody:

> The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm....

Additionally, section 452.375.13 provides:

> If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the

court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, from any further harm.

In pertinent part, section 455.501(1) defines "abuse" as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by an adult household member, or stalking of a child." § 455.501(1). Section 455.010(1) defines "abuse" as including, but not limited to, "the occurrence of any of the following acts, attempts or threats against a person": assault, battery, coercion, harassment, sexual assault, or unlawful imprisonment. § 455.010(1). While section 452.375 does not define "domestic violence," we have recognized "that the meaning of 'domestic violence,' for purposes of section 452.375.13, may be gleaned from section 452.400." *Copeland v. Copeland*, 116 S.W.3d 726, 731 (Mo.App.2003). "Section 452.400.1 states that in determining visitation rights, a court shall consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on the other person." *Id.*

"Although at first blush section 452.375.2(6) and section 452.375.13 appear to be quite similar, there are significant differences." *Loumiet v. Loumiet*, 103 S.W.3d 332, 343 (Mo.App.2003). While both sections require findings of fact, only section 452.375.2(6) requires conclusions of law.

To trigger the mandated findings of fact and conclusions of law of section 452.375.2(6), the trial court has to find that: (1) a pattern of domestic violence has occurred; and (2) awarding custody to the abusive parent is in the best interest of the child. However, to trigger the mandated findings of section 452.375.13, a pattern of domestic violence or abuse does not have to be found and there does not have to be an award of custody to the abusive parent. Rather, to trigger the section 452.375.13 findings, there only needs to be a finding by the trial court that domestic violence or abuse has occurred, which logically would include a single isolated incident of domestic violence or abuse.

*Id.* (internal quotation marks and citations omitted).

"Compliance with the requirements of subsections 452.375.2(6) and 452.375.13 is mandatory." *Dickerson v. Dickerson*, 55 S.W.3d 867, 872 (Mo.App.2001). "If the record reflects evidence of domestic violence, the trial court must make written findings consistent with these statutory provisions." *Id.*

As previously recounted, there was considerable testimony from Ms. Brown regarding domestic violence by Wife against the children. Additionally, the court noted in the judgment that Husband "has made allegations that [Wife] has abused the minor children and/or allowed the minor children to be abused by others while in her primary physical care." The court also acknowledged that Wife "has denied and continues to deny any and all such allegations...." Furthermore, the court stated that "[b]ased upon the allegations of abuse raised by [Husband], the attached Parenting Plan ... is in the best interest of the minor children at this time." However, the court never made a finding of fact as to whether domestic violence occurred. Thus, notwithstanding our belief that the court considered the evidence and made its custody determination with the children's best interests in mind, we are constrained to remand the case so that the court may

make determinations that will comply with the requirements of section 452.375.13. *See Copeland,* 116 S.W.3d at 732. Absent the court concluding on remand that the findings required by section 452.375.13 warrant changes to the custody plan that was previously entered, we discern no error in the parenting plan previously entered. *See id.* Point Three is granted.

 Lastly, Wife alleges in Point Seven that the trial court erred in failing to include a Form 14 with the judgment contending one was required by Rule 88.01. Wife argues that use of the Form 14 is mandatory, and thus, the trial court improperly ordered her to pay child support without the Form 14 being attached to the judgment. We note that despite a reference in the judgment to an attached Form 14 worksheet, we find no such Form 14 worksheet in the record presented to this court.[7]

 The trial court has broad discretion in setting child support awards. *Buckner v. Jordan,* 952 S.W.2d 710, 712 (Mo. banc 1997). "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo.App.1994) (quoting *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 195 (Mo.App.1987)).

 "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record ... or by articulating on the record how it calculated its Form 14 amount." *Woolridge,* 915 S.W.2d at 382. "The lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount." *K.O.H. ex rel. Bax v. Huhn,* 69 S.W.3d 142, 146 (Mo.App.2002). Once the court determines the presumed correct child support amount, the court may then rebut the presumed correct child support amount "when the trial court determines that the amount is unjust or inappropriate after consideration of all the relevant factors." *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997).

While the court included a finding "that a strict application of the child support guidelines would be unjust and inappropriate," the court failed either to attach a Form 14 showing the presumed correct child support amount or to articulate on the record how it calculated its Form 14 amount. *Woolridge,* 915 S.W.2d at 382. The recitation in the judgment states what the "child support payments" on the Form 14 worksheet were, but does not state on the record how the court arrived at those calculations. *See Luckeroth v. Weng,* 53 S.W.3d 603, 607 (Mo.App.2001). Thus, we remand the cause to the court to make findings that will comply with the foregoing requirements. Point Seven is granted.

---

7. The judgment provides:
 [t]hat child support for the minor children to be paid by [Wife] to [Husband], calculated pursuant to the Form 14 worksheet attached hereto and referred to as Exhibit "2" calculates child support payments due from [Wife] in the amount of $775.15 per month [i]f said worksheet includes the child rearing costs paid by [Wife], and $529.65 if said worksheet does not include work related childcare costs of [Husband]. Taking into account that [Wife] and [Husband] will each incur travel expenses for the exercise of [Wife's] parenting time with the minor children, the respective incomes of the parties, and all other factors relevant to these parties in this case, the Court finds that a strict application of the child support guidelines would be unjust and inappropriate, and deviates downward for those reasons.

That portion of the judgment establishing child support is reversed, and the cause is remanded for findings required by section 452.375.13 and Rule 88.01. In all other respects, the judgment is affirmed.

PREWITT, J. and GARRISON, J., concur.