Diane Marie CAPEHART, Respondent,

v.

Timothy S. CAPEHART, Appellant,

and

State of Missouri, Department of Social Services, Division of Child Support Enforcement, Respondent.

No. 25016.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2003.

Robert D. McGee, Springfield, for Appellant.

Chuck D. Brown, Joplin, for Respondent Capehart.

Doug Noland, for Respondent State of Missouri.

ROBERT S. BARNEY, Judge

Timothy S. Capehart ("Husband") appeals the judgment of the Circuit Court of Lawrence County dissolving his 18 year marriage to Diane Marie Capehart ("Wife"). In pertinent part, the judgment gave Husband and Wife joint legal custody of their five children—Timothy Capehart, born October 31, 1985, ("Timmy"); Stephanie Capehart, born November 29, 1987, ("Stephanie"); Joseph Capehart, born April 21, 1994, ("Joseph"); Alexander Capehart, born September 9, 1996, ("Alexander"); and Angelea Capehart, born December 16, 1998, ("Angelea"). Further, Wife was awarded primary physical custody of Stephanie, Joseph, Alexander, and Angelea while Husband was awarded primary physical custody of Timmy, and Husband was ordered to pay Wife $1,022 a month as child support. In its division of marital property and indebtedness, the circuit court allocated to Wife debts totaling $841.18 and to Husband debts totaling $494,163.42.

Husband now raises three points of trial court error challenging the trial court's grant of primary physical custody of Stephanie, Joseph, Alexander, and Angelea to

Wife; division of marital debts between the parties; and calculation of child support obligation.

"An appellate court must affirm the trial court's judgment in a dissolution case if it 'is supported by substantial evidence, it is not against the weight of the evidence, and it neither erroneously declares nor applies the law.'" *In re Marriage of Turner*, 5 S.W.3d 607, 609 (Mo.App.1999) (quoting *In re Marriage of Sisk*, 937 S.W.2d 727, 730 (Mo.App.1996)); *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In our review of the record on appeal, we accept as true the evidence and inferences therefrom favorable to the trial court's judgment and disregard all contrary evidence. *Turner*, 5 S.W.3d at 609. "'The trial court is free to believe or disbelieve all, part or none of the testimony of any witness.'" *Id.* (quoting *Sisk*, 937 S.W.2d at 730).

We note initially that, in violation of Rule 84.04(d)(1)(C)[1], Husband's points relied on fail to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Strictly speaking, failure to comply with the dictates of Rule 84.04 preserves nothing for appellate review. *Coyne v. Coyne*, 17 S.W.3d 904, 906 (Mo. App.2000). However, because we are "more tolerant regarding technical requirements [of Rule 84.04] when the questions presented relate to the welfare of children," *Rinehart v. Rinehart*, 877 S.W.2d 205, 206 (Mo.App.1994), we will review the issues presented on their merits, provided that "'the argument is sufficient in conjunction with the points relied on to ascertain the issues being raised.'" *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo.App.2000) (quoting *Landry v.*

*Miller*, 998 S.W.2d 837, 841 (Mo.App. 1999)). After reviewing Husband's points relied on and arguments, we find that we are able to discern his claims of error therefrom and will review those claims *ex gratia. Stangeland*, 33 S.W.3d at 703.

In his first point on appeal, Husband contends that the trial court erred in awarding primary physical custody of Stephanie, Joseph, Alexander, and Angelea to Wife because the award was not supported by sufficient evidence, the award was against the weight of the evidence, and the trial court failed to comply with sections 452.375.9 and 452.310.7.[2]

Husband points to evidence of Wife's poor parenting skills, interference in Husband's communication with the children, and marital misconduct as evidence that Wife should not have been awarded primary physical custody of Stephanie, Joseph, Alexander, and Angelea. Similarly, Wife identifies Husband's living arrangements, "history of neglect", preference for home schooling, and past behavior as evidence to justify the court's judgment awarding Wife primary physical custody of Stephanie, Joseph, Alexander, and Angelea. However, an award of split custody presupposes that neither parent is unfit because, were either parent unfit, the court would not have awarded primary physical custody of any of the children with that parent. *See D.S.P. v. R.E.P.*, 800 S.W.2d 766, 769 (Mo.App.1990). Viewing the evidence in the light most favorable to the verdict and ignoring all contrary evidence, we find there is sufficient evidence in the record from which the trial court could conclude that both Husband and Wife are fit parents.

1. Rule references are to Missouri Court Rules (2003).

2. Statutory references are to RSMo 2000, unless otherwise set out.

Wife had been a stay-at-home mother and the children's primary caregiver throughout her marriage to Husband. This was especially true during the two-year period that Husband's job required extensive travelling. Wife was also responsible for the home schooling of the children.

Husband had been home schooling Timmy since Timmy began living with him after Husband and Wife separated. Husband testified he had never made any negative comments about Wife to the children and believed that doing so would not be in their best interests. Further, Husband plans to seek employment as a college professor, which would provide greater benefits and latitude in his work schedule. Also, Timmy and Stephanie testified they wanted to live with Husband.

This constitutes sufficient evidence from which the trial court could conclude that both Husband and Wife are fit parents. Therefore, the trial court's judgment awarding Wife primary physical custody of Stephanie, Joseph, Alexander, and Angelea was supported by the evidence and was not against the weight of the evidence.

■ Husband also alleges that the parenting plan did not meet statutory requirements. Section 452.375.9 provides that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310 . . . ." Section 452.310.7 sets out the arrangements that must be addressed in every parenting plan outlining custody, visitation, residential time, and the specific factors that must be included in detailing how the decision-mak-

ing responsibilities will be shared by the parents.

The trial court did not adopt the parenting plans submitted by Husband and Wife. In its judgment, the trial court identified a parenting plan "attached hereto and incorporated by reference herein"; however, the trial court failed to attach the referenced parenting plan. Husband concedes that the trial court intended to attach the parenting plan that accompanied the docket entry judgment in this case.[3]

In its judgment, the court ordered that Husband and Wife have joint legal custody; that Wife would have primary physical custody of Stephanie, Joseph, Alexander, and Angelea; that Husband would have primary physical custody of Timmy; and that each party would have temporary custody, at specified times, of the children or child not in his or her primary custody. The judgment, however, did not provide for: (1) school holidays; (2) how the winter, spring, summer and other vacations from school would be spent; (3) the times and places for transfer of the children between the parties in connection with the residential schedule; (4) a plan for sharing transportation duties associated with the residential schedule; (5) appropriate times for telephone access; (6) suggested procedures for notifying the other party when a party requests a temporary variation from the residential schedule; or (7) any suggested restrictions or limitations on access to a party and the reasons such restrictions are requested. § 452.310.7(1). Furthermore, with reference to legal custody, the judgment did not provide for how the decision-making rights and responsibilities would be shared concerning (1) educational decisions and methods of communicating information from the school to both par-

**3.** By its terms, the docket entry judgment was not "effective until the date of filing of the executed written judgment of dissolution."

ties; (2) medical, dental and health care decisions including how health care providers will be selected and a method of communicating medical conditions of the child and how emergency care will be handled; (3) extracurricular activities, including a method for determining which activities the child will participate in when those activities involve time during which each party is the custodian; (4) child care providers, including how such providers will be selected; (5) communication procedures including access to telephone numbers as appropriate; (6) a dispute resolution procedure for those matters on which the parties disagree or in interpreting the parenting plan; and (7) how the expenses of the child will be paid. § 452.310.7(2)–(3).

Because the trial court failed to include in the judgment all of the prerequisites for a parenting plan required by sections 452.375.9 and 452.310.7, the case must be remanded to the trial court with directions to prepare a parenting plan in compliance with those statutory provisions. *In re Marriage of Parmenter*, 81 S.W.3d 234, 237 (Mo.App.2002).

■ Husband also asserts the trial court erred in failing to include written findings, pursuant to section 452.375.6, as to the relevant factors that caused the trial court to enter its custody order and as to why it was in the best interests of the children. Section 452.375.6 provides that if the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interests of the child, the court shall include a written finding in the judgment based on the public policy in subsection 4 of that statute and each of the factors listed in the subdivisions of subsection 2 of that statute "detailing the specific relevant factors that made a particular arrangement in the best interest of the child." Similarly, it provides that "[i]f a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement." § 452.375.6.

In this case, Husband and Wife both submitted proposed parenting plans, neither of which the trial court adopted. Instead, the trial court formulated its own custody arrangements in the judgment but failed to make the findings required by section 452.375.6. Under such circumstances, the case must be remanded to the trial court to make the findings required by section 452.375.6. *See Brandow v. Brandow*, 18 S.W.3d 584, 588 (Mo.App. 2000).

■ Husband's second point alleges the trial court abused its discretion by failing to distribute the marital debt in a fair and equitable manner. In its division of marital property, the trial court awarded Wife marital assets valued at $3,930 and Husband marital assets valued at $4,890. The trial court assigned marital indebtedness totaling $841.18 to Wife and $494,163.42 to Husband. Husband argues such a distribution is so skewed as to constitute an abuse of discretion. We agree.

"In a proceeding for dissolution of the marriage ... the court ... shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors...." § 452.330.1. Although section 452.330 does not provide a definition as to what constitutes marital debt, it has been held that marital debt is debt incurred during marriage or in contemplation of marriage. *In re Marriage of Thomas*, 21 S.W.3d 168, 177 (Mo.App.2000); *Wright v. Wright*, 1 S.W.3d 52, 60 (Mo.App.1999).

■ In dividing marital debt between the parties, the trial court is vested

with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb such a division absent a clear showing of an abuse of discretion. *Wright,* 1 S.W.3d at 60. An abuse of discretion occurs when a trial court's ruling is "'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. There is no abuse of discretion if reasonable persons could differ about the propriety of the trial court's decision.'" *Id.* (quoting *Stevens v. Craft,* 956 S.W.2d 351, 355 (Mo.App.1997)). The trial court has the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty of paying off the debt and holding the other spouse harmless on the debt. *Id.* The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude the allocation of the debt to that spouse when the court determines it to be a marital debt. *Id.*

In the case at bar, the marital indebtedness assigned to Husband consists mainly of an electric bill, various medical bills, numerous credit card balances, substantial student loan debt, and loans from family members; the marital indebtedness assigned to Wife consists of two telephone bills.[4]

At the time of trial, Husband was unemployed and attending classes. Husband testified that he was receiving unemployment benefits of $1,000 per month but that $500 of that was being intercepted. Husband is a trained dentist, but testified that he is not able to practice because of an automobile accident that negatively affected his fine motor skills needed to practice dentistry. Husband also stated that he returned to school to get a higher level degree to enable him to teach college level classes. Husband testified that he expected to complete his studies, at the earliest, in the summer of 2002. Husband testified that he hoped to obtain employment as a professor once his studies were completed, but that his options were limited because he was in default on his student loans and could not be employed by any state educational institution while in default. Husband also confirmed that he could earn approximately $30,000 a year as a college professor.

Wife also testified that she was unemployed at the time of trial and was receiving a cash benefit of $387 a month from the State. Wife stated that she was attending classes to become a graphic designer and that she expected to earn approximately $10 an hour after she finished the program in May 2002.

Given the relatively equal division of marital property and status of the parties at the time of trial, we are unable to find sufficient evidence that would justify setting aside to Husband debts representing 99.83 percent of the marital indebtedness and to Wife debts representing 00.17 percent of the marital indebtedness. Both Husband and Wife were unemployed, but testified to their expected earnings in the near future. We acknowledge that Husband testified he could make more than Wife after they have completed their studies; however, the difference testified to does not justify such a disproportionate division of marital indebtedness.

Thus, we are forced to conclude that the trial court's judgment is "'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'" *Wright,* 1 S.W.3d at 60 (quoting *Stevens,* 956 S.W.2d at 355).

4. The judgment makes no reference to any nonmarital indebtedness of the parties.

That part of the judgment allocating marital indebtedness is reversed and remanded for the trial court to enter a new judgment dividing the marital indebtedness in a fair and equitable manner.

Husband's final point on appeal argues the trial court erred in imputing income to Husband and in calculating Husband's child support obligation.

■ As outlined previously, Husband testified that he could earn $30,000 a year as a starting professor. The trial court imputed to Husband a monthly gross income of $3,186 and did not impute to Wife any income.[5] Husband claims it was error for the trial court to impute to him income of more than $30,000 annually, or $2,500 monthly, "if income was to be imputed at all." Husband claims there was no evidence that he would have been able to earn any more than what his testimony indicated.

■ Factors to be considered when imputing income include education, recent work history, occupational qualifications, earnings history when employed, and prevailing job opportunities. *See Bullard v. Bullard,* 969 S.W.2d 880, 883 (Mo.App. 1998). Before going back to school, Husband was earning approximately $50,000 a year as an employee for Westat, a research group. Husband testified that the jobs he had applied for ranged in salary from $24,000 to $32,000 a year, but he believed he could earn $30,000 a year as a professor. However, the trial court chose to follow the findings of the Division, based on the Department of Economic Development Occupational Wage Guide, in imputing income of $38,232 a year to Husband. This is sufficient evidence that the trial court could rely on in making its determination. Based on the factors to be considered and the evidence presented at the hearing, the trial court did not abuse its discretion in imputing income to Husband of $3,186 per month.

■ Husband also claims the trial court erred in not entering a credit on Line 2c of the Form 14 the trial court used to calculate Husband's child support obligation. Husband argues he is entitled to the credit because Husband was awarded primary physical custody of Timmy.

Comment C to Form 14 outlines the use of the form in a split custody situation. It provides, in pertinent part,

> Split custody refers to the situation in which each parent has primary physical custody of one or more but not all of the children. In those instances, a separate Form No. 14 is completed for the number of children in the primary physical custody of each parent, using the adjusted monthly gross income (line 3) for both parents but *disregarding the children in the primary physical custody of the other parent.*
>
> * * *
>
> After completion of each parent's Form No. 14, subtract the smaller amount from the greater, and the difference between the two obligations shall be paid

5. This is identical to the determination of the Division of Child Support Enforcement ("Division") in entering its temporary order of child support on March 15, 2001. In that order, the Division determined that

[Wife] is not imputed any income because doing so would increase [Husband]'s support obligation.

[Husband] is imputed a gross monthly income of $3,186.00 per month, rounded, based on the Missouri Department of Economic Development 1998–1999 Occupational Wage Guide, OES Code # 31212 Health Specialties Teachers ($18.38 per hour × 40 hours per week × 52 weeks per year / 12 months per year = $3,186.00 per month).

by the parent with the larger of the two obligations.

(emphasis added). Thus, Husband was not entitled to a credit on Line 2c of the Form 14, and the trial court correctly completed the Form 14 in calculating Husband's child support obligation.

We do note that the trial court did *not include the Form 14 calculating Wife's* child support obligation. However, because Wife had no income and was imputed no income, "had a second Form 14 been completed, no part of the presumed child support would have been attributed to her." *Quackenbush v. Hoyt*, 940 S.W.2d 938, 941 (Mo.App.1997). The entire presumed child support would have been attributed to Husband; thus, "[t]he failure to complete a second Form 14 is of no effect." *Id.*

That portion of the judgment establishing a custody arrangement and parenting plan is remanded for the trial court to address those statutory requirements of sections 452.375.9, 452.310.7, and 452.375.6. The portion of the judgment establishing the division of marital indebtedness is reversed and remanded for additional consideration. The judgment of the trial court imputing income to Husband and calculating Husband's child support obligation is affirmed.

MONTGOMERY, P.J. and GARRISON, J., concur.