ROY L. RICHTER, Judge
S.L.B., now known as S.L.F. ("Mother"), appeals from a judgment of modification entered by the trial court, finding, inter alia , that there have been changes in circumstances so substantial and continuing as to make the terms of the judgment of paternity not in the best interests of the minor child, S.F.F. ("Daughter"), and modified the judgment of paternity by purporting to adopt Respondent's proposed parenting plan and award S.C.G. ("Father") sole legal custody of Daughter. We reverse and remand.
I. Background
Daughter, born in October 2011, is the daughter of Mother and Father. On September 26, 2013, a Judgment and Decree of Paternity was entered upon agreement without a trial, inter alia , awarding Mother sole legal and sole physical custody of Daughter; awarding Father alternate weekends with Daughter following a nine-month graduated visitation schedule; and ordering Father to pay $450 per month in child support and provide health insurance for the child.
Father filed a Motion to Modify Judgment and Decree of Paternity on August 5, 2015, alleging changed circumstances such as Mother's refusal to honor Father's custody rights and allowing Daughter to decide whether she will go with Father. Father requested joint legal and joint physical custody and changing the child's surname to Father's, which he alleged were requests made in the child's best interest.
A guardian ad litem ("GAL") entered her appearance in the case on October 30, 2015. On November 6, 2015, Mother filed a Counter-Motion to Modify Judgment and Decree of Paternity, arguing that Father's current visitation endangers Daughter's physical health and/or impaired her emotional development based on allegations of sexual abuse. Mother filed a Verified Motion for Temporary Restraining Order with Notice and Notice on Hearing for Application for Preliminary Injunction on November 17, 2015. Although Father filed a response, the parties entered a Consent Temporary Restraining Order on November 18, 2015, to supersede the existing custody orders: Father was ordered to have therapeutic visits with Daughter of up to two hours per week through COMTREA;[1] the parties were ordered to contact *516 COMTREA to arrange their orientations; the charges for paid visits were to be paid initially by Father and could be reallocated later; the trial setting of December 17, 2015, was vacated and the case was set on the January 11, 2016 call docket; and Mother was ordered to post bond in the amount of $25. An Amended Consent Temporary Restraining Order ("TRO") provided that Father's therapeutic visits with Daughter would be extended to two hours per week supervised and transferred from SAEP[2] to the PAVERS[3] program, which is grant funded.
On May 27, 2016, Father filed an Amended Motion to Modify Judgment and Decree of Paternity, requesting sole legal and sole physical custody of Daughter, alleging that "shortly after [Father] was awarded overnight visitation, [Mother] contacted law enforcement indicating that [Father] had abused his daughter;" "[t]hat [Mother] made allegations of a sexual nature against [Father];" "[t]hat said allegations have been unsubstantiated by [the Division of Family Services] after interview, [Child Advocacy Center], and investigation." Father added in his amended motion that within one week of the allegations being unsubstantiated, a new hotline call was made to the State, amending the facts of the original allegation to include more significant abuse, despite Daughter's clear description of the alleged abuse at the time in the Child Advocacy Center ("CAC") and her repeated description of the event to her counselor. The motion also alleged that in December 2015, Daughter specifically told her therapist that Mother told her to say she did not want to see her dad, that Mother has caused Daughter to miss supervised visits with Father, that she alienates Daughter from Father, and she has no intent to co-parent with Father. Furthermore, Father alleged that Mother has a history of mental health problems, substance abuse, and lost custody of another child to that child's father, and that Father even observed her drinking (or impaired) in the presence of Daughter.
On June 15, 2016, Father filed a Motion for Temporary Restraining Order and Application for Preliminary Injunction, with similar allegations as the Amended Motion to Modify Judgment and Decree of Paternity, adding that Mother's second set of allegations were unsubstantiated by the Division of Family Services, and that Mother then called the State hotline a third time. Father alleged that Daughter was gradually becoming more withdrawn and less affectionate toward Father during his visits, and immediate and irreparable harm could come to Daughter if Mother's alienation did not stop.
On June 27, 2016, the parties and GAL entered into a Consent Order Amending Temporary Restraining Order, which modified the TRO in the following ways:
1) Father was given unsupervised visitation on every weekend in July for the specified 24-hour period of time; the TRO hearing and hearing on Preliminary Injunction was set for July 27, 2016 at 1 p.m.
2) Exchanges were to take place at the Pevely Police Station.
3) For all transfers, each parent would remain in their car and have no interaction. Another person of their choosing should accompany them and these persons *517 were to exchange Daughter inside the station.
4) For the first two visits, no telephone contact between Mother and Daughter would occur. Thereafter both parents could call to speak with Daughter once each day that she was with the other parent.
5) The parties were to sign up for talkingparents.com within three days and utilize that site to communicate unless there was an emergency.
6) At Father's request, he would also continue his two-hour visits on Wednesdays through the PAVERS program at COMTREA.
On July 27, 2016, Mother, Father, and the GAL entered into a consent order and the trial court further agreed to amend the TRO so that Father would have custody of Daughter every weekend, from Friday evening until Sunday evening except during his National Guard weekends, and have two-hour PAVERS visits every other Wednesday, alternating with overnight visits every other Wednesday evening until Thursday morning.
The matter was tried on September 27 and 29, 2016, at which time evidence was adduced from both parties.
Mother and Father were given until October 28, 2016, to submit their proposed findings of fact. Father filed his on October 14, 2016, and Mother filed hers on October 26, 2016. The trial court entered the judgment on November 14, 2016, simply signing Father's Proposed Judgment of Modification of Paternity, Findings of Fact and Conclusions of Law, and making two minor corrections in the first paragraph of the document (hereinafter, the "Judgment"). In the Judgment, the court finds "there have been changes in circumstances so substantial and continuing as to make the terms of the [September 26, 2013] Judgment not in the best interests of the child, and modification of the order is in the best interests of the child." The trial court found that Father's proposed parenting plan, Exhibit 5, is in the best interests of the child, in addition to Mother having limited visitation and Father having sole legal custody "due to Mother's continued alienating behaviors, and her untreated mental health diagnoses."
Mother filed a motion for new trial on December 9, 2016, which was denied on January 5, 2017. Mother filed her Notice of Appeal on February 11, 2017. This appeal follows.[4]
II. Discussion
Mother alleges six points on appeal. In her first allegation of error, Mother contends the trial court erred in finding that it is in Daughter's best interests to have limited visitation with Mother because there is no substantial evidence to support the finding and it is against the weight of the evidence in that the finding was inconsistent with the evidence, including the evidence showing that Mother did not alienate Daughter from Father, or at least stopped alienating to the extent she accidentally did by way of Daughter picking up on her anxiety, and that the drastic reduction in time that Daughter now has with Mother is contrary to the recommendation of the GAL who recommended a modified 2-2-3 schedule so that Daughter would never be away from Mother for more than three days at a time because of the very strong bond between the two.
*518 Second, Mother alleges the trial court erred in finding that it is in Daughter's best interests to have limited visitation with Mother because the court erroneously applied the law in that the court was required to, but did not, consider the statutory factors of Section 452.375.2 (RSMo. Cum. Supp. 2015),[5] and was also required to, but did not, consider the public policy stated in Section 452.375.4, and since the Judgment amounts to misapplication of the factors specified in Section 452.375.2.
Third, Mother alleges the trial court erred in finding that it is in Daughter's best interests to have limited visitation with Mother because the court erroneously applied the law in that the court never modified Mother's award of sole physical custody from the original judgment, but the purported parenting plan only allocated Mother 11 percent of the total parenting time in the typical two-week custody schedule.
Fourth, Mother contends the trial court erred in finding that it is in Daughter's best interests to have limited visitation with Mother because the court erroneously applied the law in that the court, in determining custody in accordance with the best interests of Daughter, did not include in its judgment a written finding based on the public policy in Section 452.375.4 and the factors listed in Section 452.375.2(1) to (8) and these findings were required in this case where child custody was disputed between the parties.
Fifth, Mother alleges the trial court erred in failing to adopt and attach a parenting plan to its Judgment because Section 452.375.9 requires that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of Section 452.310...." and the trial court's judgment merely finds that Father's Proposed Parenting Plan is in Daughter's best interests but never adopted, attached, or incorporated Father's Proposed Parenting Plan by reference.
Sixth and finally, Mother alleges the trial court erred in failing to grant the parties the fair and impartial trial which due process requires because it is a trial court's duty to maintain an impartial attitude and a status of neutrality, and keep its questions and comments to a minimum, and Judge Stewart demonstrated his own lack of impartiality by indicating that he had already decided one of the ultimate issues of the case before Mother even had an opportunity to present any of her evidence, and through his hostile attitude toward Mother's expert witness.
We will discuss Mother's sixth point first, which we find important to first discern whether the trial court was biased; this is followed by Mother's third and fifth points, in which we find error and grounds for reversal; and then finally, we address Mother's first, second and fourth points.
A. Standard of Review
As an initial matter, we recognize that the trial court merely signed Respondent's Proposed Judgment of Modification of Paternity, Findings of Fact and Conclusions of Law, which had been submitted to the court by Father, simply crossing out "Petitioner" and "Respondent" and replacing with the opposite party, because the terms had been transposed in the first paragraph of the proposed judgment. Although the verbatim adoption of a proposed judgment may not be erroneous per se, Missouri courts have repeatedly warned trial courts for doing so. See *519 State v. Griffin, 848 S.W.2d 464, 471 (Mo. banc 1993). We have stated, "when a court adopts in its entirety the proposed findings of fact and conclusions of law of one of the parties, there may be a problem with the appearance. The judiciary is not and should not be a rubber-stamp for anyone." Neal v. Neal, 281 S.W.3d 330, 337 (Mo. App. E.D. 2009) (quoting State v. Griffin, 848 S.W.2d 464, 471 (Mo. banc 1993) ). Instead, "[t]rial judges are well advised to approach a party's proposed order with the sharp eye of a skeptic and the sharp pencil of an editor." Nolte v. Wittmaier, 977 S.W.2d 52, 57 (Mo. App. E.D. 1998). This practice will never be perceived as impartial by the opposing party in any highly contested case and we strongly advise trial judges to draft their own fair and impartial judgments. Our review is nevertheless guided by Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
When reviewing a custody modification case, "the trial court's judgment will be upheld unless there was no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies the law." A.E.B. v. T.B., 354 S.W.3d 167, 170 (Mo. banc 2011). "Substantial evidence means competent evidence from which the trial court could reasonably decide the case." Dunkle v. Dunkle, 158 S.W.3d 823, 832 (Mo. App. E.D. 2005) (internal quotations omitted). "[T]he trial court has broad discretion in child custody matters, and we must affirm its decision unless we are firmly convinced that the welfare and best interests of the child require otherwise." Scherder v. Sonntag, 450 S.W.3d 856, 861 (Mo. App. E.D. 2014) (citing Chapin v. Chapin, 985 S.W.2d 897, 900 (Mo. App. W.D. 1999) ).
B. Analysis
Point VI-Trial court was not biased.
We begin with Mother's sixth point on appeal, in which Mother alleges the trial court erred in failing to grant the parties the fair and impartial trial which due process requires because it is a trial court's duty to maintain an impartial attitude and a status of neutrality, and keep its questions and comments to a minimum, and the trial judge demonstrated his own lack of impartiality by indicating that he had already decided one of the ultimate issues of the case before Mother even had an opportunity to present any of her evidence, and through his hostile attitude toward Mother's expert witness.
" 'Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display [do not create bias]. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.' " Francis v. Wieland, 512 S.W.3d 71, 83 (Mo. App. W.D. 2017) (quoting McPherson v. U.S. Physicians Mut. Risk Retention Group, 99 S.W.3d 462, 487 (Mo. App. W.D. 2003) ). Moreover, court rulings about evidentiary issues are fully within judicial discretion, and we do not find that discretion abused or bias indicated where the court seeks to limit testimony to the issues and evidence actually before it and is sufficiently informed at the conclusion of direct evidence in the case to render its ruling. Id. at 84. A trial judge possesses an inherent right to question witnesses as to any matters material to the issues involved. McClelland v. Williamson, 627 S.W.2d 94, 99 (Mo. App. S.D. 1982).
"[A] disqualifying bias and prejudice is one with an extra[-]judicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case."
*520 State v. Cella, 32 S.W.3d 114, 119 (Mo. banc 2000) (citing State v. Nicklasson, 967 S.W.2d 596, 605 (Mo. banc 1998) ). But see Liteky v. U.S., 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring [during] the current proceedings, or of prior proceedings, do not constitute a basis for bias or partiality motion, unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). Bias must stem from an extra-judicial source. State v. Hunter, 840 S.W.2d 850, 866 (Mo. banc 1992).
Mother argues that the trial court made statements showing bias during a discussion between the parties' attorneys, the GAL, and the trial court, on whether Daughter's statements should be admitted as a hearsay exception. The trial court wanted to know whether he should carve out a hearsay exception for the child's statement even after the experts found the allegations against Father to be unsubstantiated, and he was concerned about time. No one provided the judge with the answer and he never directly ruled on the motion relating to Mother's intent to introduce Daughter's statements. The parties stipulated that the CAC video would come into evidence and the trial court would watch it in his chambers, outside of trial. However, Mother argues that the trial court decided the ultimate issue of whether Father should have visitation with Daughter before Mother even presented evidence, including the CAC interview.
After reviewing the record and statements made by the trial court, we find that the trial court's statements were concerned about wasting time and presenting cumulative evidence, not bias. The trial court's efforts to streamline the proceedings are reflective of its common sense and concern for judicial and client resources, which is not an error. Mother also presented no evidence of an extra-judicial source of bias, but the trial court was informed about the case through its proceedings. Additionally, the record reveals that the trial court's questions to Dr. Shirley Caggiano about her evaluation of Daughter and her desire to make a custody recommendation were simply inquisitive and within the proper bounds as they sought to clarify the issues involved. See Inloes v. Inloes, 567 S.W.2d 732, 735 (Mo. App. 1978). The trial court wanted to learn more and discover how Dr. Caggiano could make a custody recommendation without having met with one of the parents. The trial court's questioning of the witness does not require a retrial. Mother's sixth point is denied.
Point III-The trial court erred in restricting Mother's visitation without the required findings
Next, in her third point on appeal, Mother alleges the trial court erred in finding that it is in Daughter's best interests to have limited visitation with Mother because the court erroneously applied the law in that the court never modified Mother's award of sole physical custody from the original judgment but the purported parenting plan only allocated Mother with 11 percent of the total parenting time in the typical two-week custody schedule.
Although Father's Motion to Modify Judgment and Decree of Paternity, filed on August 5, 2015, requested that the trial court modify the custody arrangements for Daughter from Mother's sole legal and sole physical custody, to Father wanting joint legal and joint physical custody, the trial court's Judgment never makes an explicit finding or conclusion as to a "joint" or "sole" classification for the physical custody arrangement. Rather, the physical custody arrangement reads as follows:
*521 The Court finds that Respondent (Father's) Proposed Parenting Plan, Exhibit 5, is in the best interests of the child. The Court finds that it is in the child's best interests to have limited visitation with Mother and for Father to have sole legal custody due to Mother's continued alienating behaviors, and her untreated mental health diagnoses.
Additionally, Respondent's Proposed Parenting Plan outlined that "Father shall be responsible for parenting the child at his home at all times not hereinafter set out to Mother" and that Mother would exercise visitation every other weekend beginning at 9 a.m. on Saturdays until 6 p.m. the following Sunday, Wednesday nights of each week from 6 to 8 p.m., plus a week for summer vacation and alternating holidays and birthdays.
The interest of a parent to be involved in the care, custody, and control of his or her child is a constitutionally protected fundamental right that cannot be infringed upon by the courts without due process of law. Fowler v. Fowler, 504 S.W.3d 790, 798 (Mo. App. E.D. 2016) (citing In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004) ).
Following this Court's discussion in Morgan v. Morgan, wherein the father, similar to Mother here, was awarded physical custody of his children every other weekend, one weekly visitation, six weeks during summer break, and alternating holidays and birthdays,[6] we determine joint or sole custody based on "whether the period of physical custodial time awarded to the parents is deemed 'significant.' " 497 S.W.3d 359, 369-70 (Mo. App. E.D. 2016). Like Morgan, we find the schedule of two overnight visits every fourteen days is not "significant" and amounts to a designation of sole physical custody. Thus, Father was awarded sole physical custody under this modified parenting plan and Mother was awarded visitation. In finding that the trial court modified sole physical custody from Mother to Father, the applicable standard governing the trial court's modification judgment is set forth in the "Section 452.410 Case Law Standard," discussed in Morgan. Id. at 365-66. Thus, the parent seeking the modification must demonstrate (a) a substantial change in circumstances of the child or his custodian and (b) if the trial court finds a substantial change of circumstances as to the child or his custodian, then the trial court must determine whether a modification is necessary to serve the best interests of the child. Id. at 373.
The evidence at trial, and outlined in the findings of the trial court's judgment, demonstrates a serious breakdown in communication and cooperation since the time of the 2013 Judgment and Decree of Paternity. The accusations of abuse and disagreement on how to deal with Daughter thereafter, Mother's alienating behaviors and untreated medical health diagnosis, and Mother's refusal to allow Father his court-ordered visitation all support the trial court's finding that there have been "changes in circumstances so substantial and continuing as to make the terms of the Judgment not in the best interests of the child, ...." The trial court therefore found Father's proposed parenting plan was in the best interests of the child.
Even beyond the custody delineation, however, visitation, too, is scrutinized in the time the parents are given with their children and the standard used for a modification of such. Section 452.400.1(1) provides that that the non-custodial parent is entitled to reasonable visitation "unless the court finds, after a hearing, that visitation *522 would endanger the child's physical health or impair his or her emotional development." Further, Section 452.400.2(1) provides that the court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child," but it "shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." A trial court's failure to make those findings before restricting visitation can constitute reversible error. See Parker v. Parker, 918 S.W.2d 299, 300 (Mo. App. E.D. 1996) (reversing and remanding where trial court restricted visitation without making findings of physical endangerment or impairment of emotional development, and such findings were not supported by record); see also Buschardt v. Jones, 998 S.W.2d 791, 799 (Mo. App. W.D. 1999). In Loebner v. Loebner, this Court held that the reduction of a father's visitation by 16.75 hours per two-week period is a restriction. 71 S.W.3d 248, 258 (Mo. App. E.D. 2002).
Here, Mother went from having sole physical custody to having only "limited visitation" of every other weekend and Wednesday nights, without a court finding that Mother's visitation would endanger Daughter's physical health or impair her emotional development. We find the trial court's judgment is therefore deficient. We recognize that Father's proposed judgment, adopted by the trial court, finds instances in which Mother's acts may have caused harm to the child, including the Daughter's constant discussion of the allegations of Father's abuse against her, Daughter's dental health problems and speech delays and social anxiety, which Mother allegedly ignored, or Mother's alienation of Daughter from Father. However, given the high standard set forth in Section 452.400.2, as well as the public policy of the State that children maintain "frequent, continuing and meaningful contact with both parents after the parents have separated...." we find the trial court's judgment is deficient in restricting Mother's visitation without the statutorily required findings. See Section 452.375.4 (emphasis added); see also Russell v. Russell, 210 S.W.3d 191, 197 (Mo. banc 2007) ("Today, joint physical and legal custody is the preference in dissolution actions."). We do not find evidence in the record that proves that Daughter's more significant time with Mother, as she had previous to the modification, would endanger Daughter's physical health or impair her emotional development. We instead see that the one-sided judgment proposed by Father and adopted by the trial court ignores the evidence that Mother had been off medication since Daughter was born, Mother and Daughter were incredibly bonded, and the GAL's recommendation that although she believed Mother would struggle co-parenting with Father, she did not believe that the child needs to be taken away from her mom. Specifically, the GAL testified regarding Father's proposed judgment: "I don't think that that's in [Daughter's] best interest, because she is so bonded to [Mother]. But I am torn, because I am not convinced that [Mother] can co-parent. I am not convinced that she can set aside this very strong belief she has [that Father abused Daughter] and foster a relationship between [Daughter] and her dad." The GAL agreed that granting Father legal custody could resolve some of her concerns about co-parenting and also recommended that there be shorter gaps between visits, such as a "2-2-3" schedule where Daughter would live with one parent for two days of the week, then spend the next two days with the other parent, and then the final three days of the week with the first parent, which then alternates as the next week begins.
*523 In summary, by adopting Father's proposed judgment verbatim, the court failed to make the finding required by statute when it restricted Mother's visitation. See Parker v. Parker, 918 S.W.2d 299, 300 (Mo. App. E.D. 1996). Furthermore, the court's order is deficient because it is vague and ambiguous. See id."Provisions in a judgment should be definite and indefinite provisions are void and unenforceable." Id. (citing In re Marriage of Brooke, 773 S.W.2d 496, 499 (Mo. App. S.D. 1989) ). Mother's third point is granted. We remand the case and instruct the trial court to reevaluate Mother's visitation and provide her with "significant" time with Daughter so as to maintain their bond.
Point V-Trial court erred in failing to adopt and attach a parenting plan.
Next we address Mother's fifth point, in which Mother alleges the trial court erred in failing to adopt and attach a parenting plan to its Judgment because Section 452.375.9 requires that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of Section 452.310...." and the trial court's judgment merely finds that Father's Proposed Parenting Plan is in Daughter's best interests but never adopted, attached, or incorporated Father's Proposed Parenting Plan by reference.
In Capehart v. Capehart, the trial court did not adopt the parenting plans submitted by a husband and wife. 110 S.W.3d 920, 924 (Mo. App. S.D. 2003). The trial court's judgment identified a parenting plan "attached hereto and incorporated by reference herein;" however, the trial court failed to attach the referenced parenting plan. Id. Husband conceded that the trial court intended to attach the parenting plan that accompanied the docket entry judgment in this case. Id. On appeal, the court reversed the case not merely because the trial court failed to attach the parenting plan to the judgment, but because the trial court failed to include in the judgment all of the prerequisites for a parenting plan required by Sections 452.375.9 and 452.310.7.
As discussed supra, the trial court's judgment states, "The Court finds that Respondent (Father's) Proposed Parenting Plan, Exhibit 5, is in the best interests of the child." Additionally, the judgment references the support section of Father's proposed parenting plan, stating that Father is to continue to provide health insurance coverage and may claim Daughter as a dependent for tax purposes. The judgment finds that "there have been changes in circumstances so substantial and continuing as to make the terms of the Judgment not in the best interests of the child, in that Mother has alienated the child from Father, refused to treat her mental health conditions, and refused to allow Father his Court ordered visitation, and modification of the order is in the best interests of the child."
The trial court undeniably failed to include in its judgment the words "Father's proposed parenting plan is adopted by the trial court and incorporated in its modification judgment." However, we have no reason to find that this was anything but a clerical error. Because we have remanded the case based on Point III, we additionally order the trial court to incorporate the new parenting plan, including all of the statutory prerequisites, into its modification judgment. Point five is granted.
Points I, II, and IV: Remaining points need not be discussed.
Having reversed this matter on Mother's third point and remanding the case for the trial court to reevaluate Mother's visitation *524 and provide her with "significant" time with Daughter so as to maintain their bond, we need not discuss Mother's first, second and fourth points, which each again address Mother's limited visitation with Daughter. Whereas the trial court will be reevaluating this award, it will also do so in accordance with the statutory requirements of Section 452.375.2 and 452.375.4.
III. Conclusion
We reverse and remand the case for the trial court to reevaluate Mother's visitation and provide her with significant time with Daughter so as to allow them to maintain their strong bond, do so in accordance with the statutory requirements of Section 452.375.2 and 452.375.4, and order the trial court to adopt and attach a parenting plan accordingly.
Lisa P. Page, P.J., concurs
Philip M. Hess, J., concurs

COMTREA is the non-profit administrative agent for the Psychiatric Services Division of the Missouri Department of Mental Health for Jefferson County.

Supervised Access and Exchange Program at COMTREA.

COMTREA's program for Providing Access to Visitation and Exchanges that are Respectful and Safe.

Father has also filed a Motion to Strike [Mother's] Brief, alleging her brief substantially fails to comply with Supreme Court rules. This motion has been taken with the case on appeal. Because of our preference to dispose of the appeal on its merits, we deny this motion to strike.

All statutory references are RSMo. Cum. Supp. 2015 unless otherwise noted.

This schedule is referred to as a "Siegenthaler Schedule."