

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| I.K.R. By Next Friend J.M.R., and J.M.R., Individually, | ) ) ) | No. ED107274 |
| Respondent, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | 13SL-DR05364-01 |
| K.L.D., | ) ) | Honorable Mondonna L. Ghasedi |
| Appellant. | ) | Filed: October 1, 2019 |

## OPINION

This domestic relations case concerns the legal and physical custody and visitation of I.K.R. ("Child"), the daughter of appellant K.L.D. ("Mother") and respondent J.M.R. ("Father"). Mother appeals from the judgment of the Circuit Court of St. Louis County which modified the legal and physical custody arrangements set forth in the court's 2014 judgment under which the parties had shared legal custody, Mother had sole physical custody, and Father unsupervised visitation. On Father's motion to modify in which he alleged that Mother had falsely accused him of sexually abusing Child and that Mother had wrongfully interfered with and damaged his visitation rights and relationship with Child, the trial court granted Father sole legal and physical custody of Child and Mother one hour of supervised visitation per week.

On appeal, Mother claims (1) the trial court's award of one hour of supervised visitation per week violates § 452.375.4[1], and (2) there was no evidence to show that supervision is necessary to protect Child's emotional development. We affirm.

## Standard of Review

The applicable standard of review requires this Court to affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Morgan v. Morgan*, 497 S.W.3d 359, 363 (Mo.App.E.D. 2016) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976)). The trial court is in a superior position to weigh all of the evidence and render a judgment based upon that evidence; therefore, the judgment is to be affirmed under any reasonable theory supported by the evidence. *Id.* (citing *Love v. Love*, 75 S.W.3d 747, 754 (Mo.App.W.D. 2002)). The trial court's determination of custody will not be disturbed on appeal unless this Court is firmly convinced the determination is erroneous and is against the child's best interests. *Id.* (citing *Bather v. Bather*, 170 S.W.3d 487, 492 (Mo.App.W.D. 2005)).

## Discussion

1. *The trial court did not abuse its discretion by limiting Mother to one hour of supervised visitation per week because the court acted in Child's best interests.*

When determining issues relating to custody, the trial court is required to make determinations that will best assure that both parents have frequent, continuing, and meaningful contact with a child *so long as* it is in the best interests of the child. § 452.375.4. Here, the court awarded Mother supervised visitation with Child for up to one hour per week. Mother contends

---

[1] All statutory references are to RSMo 2012 unless otherwise indicated.

that this limited visitation violates § 452.375.4 because it does not provide for frequent or meaningful contact between her and Child. We disagree.

Generally, under § 452.400.1(1), a parent is entitled to "reasonable" visitation rights, although it is within the trial court's discretion to determine what constitutes reasonable visitation rights. *Kocsis v. Kocsis*, 28 S.W.3d 505, 510 (Mo.App.E.D. 2000). We reverse such determinations only upon a showing that the trial court has exercised its discretion in a manner that is not in the child's best interests. *Scott v. Scott*, 147 S.W.3d 887, 898 (Mo.App.W.D. 2004).

When determining what visitation arrangement is in a child's best interests, the court shall consider each of the factors identified in § 452.375.2 that it considers relevant. *See State ex rel. S.F.F. v. S.C.G.*, 554 S.W.3d 512, 522 (Mo.App.E.D. 2018). Here, we find that the court did so. First, the court looked at the needs of Child for a frequent, continuing, and meaningful relationship with both parents and the ability and willingness of each parent to provide for all of Child's needs. § 452.375.2(2). In this regard, the court considered the testimony of the court-appointed psychologist, Dr. James Reid, that Mother demonstrated behaviors consistent with borderline personality disorder and that her condition posed a serious risk to Child's psychological and emotional development. The court also examined evidence of Mother's deliberate and calculated efforts to alienate Child from Father, including by denying him contact and visitation with Child and by accusing him in reports to law enforcement of sexually abusing Child. The court concluded based on this evidence that Mother is not currently able to perform the emotional and psychological functions of a parent that are necessary to ensure Child's healthy emotional development. The court found no evidence that Father is unable or unwilling to perform his functions as a parent.

Second, the court examined which parent is more likely to allow Child frequent, continuing, and meaningful contact with the other parent. § 452.375.2(4). The court found that

3

evidence of Mother's efforts to undermine Child's relationship with Father demonstrates that Mother is opposed to Father having meaningful contact with Child and that unsupervised visitation would likely lead to further attempts by Mother to damage Father's relationship with Child, which would be damaging to Child's emotional development. The court concluded, therefore, that Father is more likely than Mother to allow Child frequent, continuing, and meaningful contact with the other parent.

Third, we find the court properly weighed the parties' wishes as outlined in § 452.375.2(1) when it considered both parents' custody preferences and the GAL's proposed parenting plan that recommended sole legal and physical custody to Father with supervised visitation to Mother.

Fourth, the court looked at the interaction and interrelationship of Child with parents, siblings, and any person who may significantly affect Child's best interests. § 452.375.2(3). The court examined evidence of Child's relationship with her step-sister, paternal grandparents, and maternal grandmother. In particular, the court heard testimony about Mother's turbulent upbringing and the troubling relationship between Mother and Child's maternal grandmother. As for Father, he testified that he was concerned that Mother's unsupervised visitation with Child may subsequently lead to unsupervised contact between Child and her maternal grandmother who Father believes played a role in undermining his relationship with Child.

Finally, the court considered the mental and physical health of all individuals involved, § 452.375.2(6), and found that Dr. Reid's testimony was persuasive in demonstrating how Mother's probable borderline personality disorder may have detrimental consequences for Child's emotional development. The court also considered evidence of Father's anxiety disorder, but did not find that Father's disorder would render him unable to effectively parent Child.

4

While we acknowledge that Mother has been granted very limited contact with Child, we defer to the trial court's discretion recognizing that the trial court has sought to respect § 452.375's overarching mandate to protect the best interests of Child while considering Mother's stated desire for contact. Yet we recognize the manifest logistical difficulties created by limiting visitation to a sole hour per week given that Mother lives several hours away from the designated visitation site. So, even if the trial court does not see fit in the future to remove supervision from its visitation plan, it might consider in the future increasing the length of the weekly visitation to several hours—even if still supervised—in order to allow Mother and Child to have a more meaningful and beneficial visit.

Nevertheless, the court properly recognized that Mother's ongoing mental health treatment was necessary for Child's well-being and specified that "[s]hould Mother ever want unsupervised visitation, she would need to demonstrate to the Court that: 1) she has accepted her diagnosis; 2) she is participating in treatment; 3) she understands how her past conduct was harmful to the Child; and 4) that she has learned how to avoid such conduct in the future so that she can ensure the proper emotional development of the Child, including how to foster the Child's relationship with Father." In this way, the court not only identified the areas of Mother's conduct which negatively impact Child's well-being but effectively provided Mother with a roadmap upon which to base a future request for unsupervised visitation or for more visitation time or both.

Point denied.

2. *There was substantial evidence to show that supervised visitation of Child is necessary to protect Child's emotional development.*

The paramount concern in child custody cases is whether the trial court's order serves the best interests of the child. *Miller v. Miller*, 184 S.W.3d 174, 180 (Mo.App.S.D. 2006). We will affirm the court's decision unless we are firmly convinced the welfare of the child requires some

other disposition. *Id.* This Court gives great deference to the trial court's assessment of the best interests of the child because it is in the better position to judge the credibility of the witnesses, as well as their sincerity, character, and other intangibles not completely revealed by the record. *In re Snoke*, 913 S.W.2d 407, 409 (Mo.App.W.D. 1996).

A trial court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development. § 452.400.2(1). If this finding *is* made, the court can order supervised visitation. *Miller*, 184 S.W.3d at 180; *Robinson v. Robinson*, 128 S.W.3d 543, 547 (Mo.App.W.D. 2003)). Here, the evidence amply supports the court's finding that supervised visitation is necessary to protect Child's healthy emotional development. At trial, Dr. Reid testified that Mother's mental condition constitutes a threat to Child's psychological and emotional development—specifically, parents with borderline personality disorder often prevent their children from developing crucial formative behaviors like attachment, identity formation, and mood regulation. In fact, based upon Mother's own testimony about Child's erratic behavior, Dr. Reid concluded that Child's behavior is consistent with a detachment disorder common in families where a parent has borderline personality disorder. Father, for his part, expressed concern that unsupervised visitation would lead to further attempts by Mother to damage Father's relationship with Child, which the court found to be a reasonable concern. Finally, Dr. Reid testified that Mother's conduct described by Father demonstrated an inability to effectively co-parent, which would be harmful to Child's emotional development. Therefore, in light of the foregoing, we find that the court's conclusion that supervised visitation is necessary to protect Child's emotional development was supported by the record.

6

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., and
Robin Ransom, J., concur.